F I L E D
**United States Court of Appeals
Tenth Circuit**

June 27, 2005

**PATRICK FISHER**
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 04-4103

LEVANGELA BEDONIE,

Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:02-CR-690-PGC)**

Scott Keith Wilson, Assistant Federal Public Defender (Steven B. Killpack, Federal Public Defender, with him on the briefs), Salt Lake City, Utah, for Defendant-Appellant.

Diana Hagen, Assistant United States Attorney (Paul M. Warner, United States Attorney, with her on the brief), District of Utah, Salt Lake City, Utah, for Plaintiff-Appellee.

Before **TACHA,** Chief Judge, **McKAY,** and **EBEL,** Circuit Judges.

**McKAY**, Circuit Judge.

In this appeal, we address whether the district court had jurisdiction to re-

open its restitution order, on its own motion, pursuant to the Mandatory Victims

Restitution Act (MVRA) or the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3664(d)(5), or Federal Rule of Criminal Procedure 35(a).

On April 19, 2002, Defendant Ms. Bedonie, an enrolled member of the Navajo Indian Tribe, was driving under the influence of alcohol when she lost control of her car. The resulting rollover accident caused the death of one of her passengers, Mr. Johnson. Defendant pled guilty to one count of involuntary manslaughter within Indian Country in violation of 18 U.S.C. § 1112(a) & (b) and 18 U.S.C. § 1153. The presentence report concluded that Defendant's guideline range was twelve to eighteen months. The report recommended that the court impose restitution for funeral expenses in the amount of $4,185.75. The report also noted that the victim's mother had requested reimbursement for the services of a Navajo medicine man in the amount of $3,140.

At the sentencing hearing, the victim's mother testified about her family's need for the services of a medicine man as part of the traditional Navajo healing process. She further stated her difficult financial situation since the death of her son. The mother also testified that her son was a promising musician and artist. She stated that he had received scholarships from different art schools and was hoping to attend the Santa Fe Art School. She also mentioned the travel expenses that she had incurred to attend the sentencing hearing.

At the end of the sentencing hearing, the district court indicated that, while

it would like to compensate the mother's loss of financial support that may have been provided to her by the victim, the restitution statutes did not authorize such an order. The court expressed frustration that it was not authorized to order lost income restitution in the instant case. Rec., Vol. II, at 28-29.

At the conclusion of the hearing, Defendant was sentenced to eighteen months in prison and ordered to pay restitution in the amount of $4,185.75 to the Utah State Office of Crime Victim's Reparations for the victim's funeral expenses and $3,140 to the victim's mother for the services of a medicine man which the court found to be necessary funeral and related services. A judgment to that effect was entered on January 23, 2004.

Seven days later, on January 30, 2004, the district court entered an order revoking its previous judgment. The court stated that "[u]pon further reflection, it is clear to the court that the restitution ordered at the [sentencing] hearing does not satisfy the requirements of 18 U.S.C. § 3663A." Rec., Vol. I, Doc. 21, at 1. The court explained that it was "legally obligated" to order restitution for the victim's future lost income and the transportation expenses of the victim's representative by "the *Mandatory* Victim Restitution Act." *Id.*, Doc. 23, at 1 (emphasis in original). It determined that failure to order this restitution constituted "clear error" and amended the judgment pursuant to Fed. R. of Crim. P. 35(a) to include a proper restitution award. *Id.* at 2.

The court awarded $50,000 in future lost income and $180 in transportation expenses to the victim's mother. However, the court expressly indicated that it was holding the amended judgment in abeyance in order to consider additional evidence and argument from the parties regarding the amount of the victim's projected lost income.

On February 5, 2004, the district court entered an order indicating its intention to appoint an expert to determine the amount of the victim's lost income. Both parties objected. However, after the court criticized the Government for opposing the appointment of an expert, the Government withdrew its objection. Rec., Vol. I, Doc. 28, at 17-21.

Following an evidentiary hearing and additional briefing and argument by the parties, the court entered a second amended judgment on May 11, 2004. In addition to the restitution amount already ordered for funeral expenses, medicine man services, and transportation expenses, the court ordered Defendant to pay lost income restitution in the amount of $446,665 to the victim's mother as his representative.

That same day, the district court entered a 111-page decision explaining the restitution award. In its decision, the court held that restitution was mandatory in the instant case because Defendant's offense of involuntary manslaughter is a crime of violence triggering the provisions of the MVRA. Alternatively, the court

-4-

held that even if involuntary manslaughter was not a crime of violence, the court would exercise its discretion under the VWPA to award the same restitution.

Our case law makes it clear that "[a] district court is authorized to modify a Defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so." *United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996). The district court relied on two alternative grounds for reopening its restitution order: 18 U.S.C. § 3664(d)(5) and Fed. R. Crim. P. 35(a).

To the extent that the court relied on 18 U.S.C. § 3664(d)(5)[1] to re-open its judgment, that reliance was misplaced. Section 3664(d)(5) provides:

> If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing. If the victim subsequently discovers further losses, the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order. Such order may be granted only upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief.

18 U.S.C. § 3664(d)(5). This section is inapplicable to the instant case. Neither the Government nor the probation office requested additional time to determine Mr. Johnson's losses – nor did they petition for future lost income restitution (or

---

[1]The district court stated "that the court has the power to hold open restitution issues for a period of 90 days after sentencing under the MVRA." Rec., Vol. I, Doc. 59, at 10. However, it did not do so. Instead, the court issued an order and then revoked it.

any other restitution payments other than those specifically ordered) at any point prior to the entry of the January 23, 2004 Order. At the time of sentencing and the entry of the January 23, 2004 Order, there were no outstanding restitution issues to address. There was no evidence in the record at that time to support payments other than those specifically ordered. The speculative nature of Mr. Johnson's alleged losses did not become an issue until *after* the district court revoked its judgment, *sua sponte*, pursuant to Rule 35(a) and 18 U.S.C. § 3664(d)(5). Nothing in section 3664(d)(5) authorizes the district court, on its own motion, to re-open a restitution order after sentencing to apply the MVRA or the VWPA where there was no timely predicate conclusion of uncertainty or a "holding open" of a restitution issue at the original sentencing.

The district court alternatively relied on Fed. R. Crim. P. 35(a) to re-open its sentencing judgment. Rule 35(a) allows courts to re-open a judgment when, *inter alia*, doing so would correct a clear error. However, applying either the VWPA or the MVRA, the district court did not have jurisdiction to re-open its judgment pursuant to Rule 35(a) because any alleged error committed was not clear.

Our case is similar to *United States v. Gordon K.*, 257 F.3d 1158 (10th Cir. 2001), where we held that a district court could not use Rule 35 to re-open issues previously resolved at sentencing. In *Gordon K.*, the district court originally

declined to order restitution and then changed its mind about the appropriateness of ordering restitution in light of new information concerning the defendant's ability to pay. *Id.* at 1159-60. In holding that this use of Rule 35 was inappropriate, we stated:

> The Advisory Committee Notes to Rule 35(c) state that "[t]he authority to correct a sentence under this subdivision is intended to be very narrow . . .[.] The subdivision is not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or for the court simply to change its mind about the appropriateness of the sentence. Nor should it be used to reopen issues previously resolved at the sentencing hearing . . . ."

*Id.* at 1161-62. After noting that "[t]he decision to order restitution is discretionary, not mandatory," *id.* at 1162 n.2, we stated that "Rule 35(c) does not permit modification of a sentence based on new information [and, therefore], the district court lacked the authority to modify Appellant's sentence." *Id.* at 1162.

The result is no different even if the MVRA were to apply in this case. As discussed above, we have previously held that Rule 35(a) does not give district courts jurisdiction to award discretionary restitution after a final sentence. *Id.* We now hold that Rule 35(a) does not permit re-opening this restitution order under the MVRA because any error that may have occurred is not "clear."

The district court's re-opening of its judgment in this case was to consider the *possibility* that some as-of-yet unestablished loss *might* warrant restitution

-7-

pursuant to the MVRA.[2]  However, absent some obvious oversight of a factual basis for restitution in the original sentencing record, there was no "clear error" here.  No court had previously ordered lost income restitution in this situation and one could easily interpret the statute to allow for lost income restitution only for surviving victims.  Similarly, it is not "clear" whether involuntary manslaughter would even qualify as a crime of violence and trigger the provisions of the MVRA.  The Supreme Court's recent decision in *Leocal v. Ashcroft*, __ U.S. __, 125 S. Ct. 377 (2004), where the Court held that driving under the influence of alcohol and causing serious bodily injury in an accident was not a crime of violence, has called our decision in *United States v. Lujan*, 9 F.3d 890 (10th Cir. 1993), into serious question.

Furthermore, the district court's actions after re-opening the sentence are not consistent with rectifying a clear error.  After re-opening its order, the district court "direct[ed] further briefing and a hearing on additional restitution issues uncovered in the course of preparing the opinion on the restitution issues."  Rec.

---

[2]The district court stated that failing to order restitution under the MVRA was "clear error" because it failed to order restitution that was *mandatory*.  This argument, however, misses the point.  The alleged "error" that occurred in this case was that the district court did not initially determine that the lost income restitution provision (18 U.S.C. § 3663A(b)(2)(c)) applied to a deceased victim. If the district court had originally found that this provision applied, but then chose not to award restitution as required by the statute and the record supported it, the mandatory nature of the MVRA could hypothetically make this clear error.

Vol. I, Doc 21. The court then appointed an expert to determine "*whether sufficient evidence exists to support a lost income award, and, if so, what the amount of that award should be.*" *Id.*, Doc. 28, at 13 (emphasis added). Thus, the error was not so clear to the district court that it required additional evidence only on the *amount* of restitution. Instead, the scope of the additional briefing and expert opinion also included determining whether any restitution should be given at all. Concluding that an error was so clear as to permit its modification under Rule 35(a) is inconsistent with a decision to order re-briefing on the question.

Since the district court did not commit the requisite "clear error" in failing to award lost-income restitution at sentencing, it was without jurisdiction to re-open the issue under Rule 35(a) in order to impose a new restitution award. We note that Defendant raised several other claims of error on appeal. However, because the district court lacked jurisdiction to re-open its original order, it is unnecessary for us to address the merits of Defendant's other contentions of error.

**REVERSED** and **REMANDED** with instructions to vacate the amended Orders of January 30, February 5, and May 11, 2004, and to reinstate the Order of January 23, 2004, awarding total restitution in the amount of $7,325.75.