**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 26, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

BRIAN RUSSELL DOLAN,

    Defendant-Appellant.

No. 08-2104

---

**ORDER**

---

Before **MURPHY, ANDERSON,** and **GORSUCH**, Circuit Judges.

---

Appellant's petition for rehearing is granted *sua sponte* for the limited purpose of adding the following footnote to the end of section II, page 19:

> Mr. Dolan argues that our holding conflicts with *United States v. Bedonie*, 413 F.3d 1126 (10th Cir. 2005). It does no such thing. In *Bedonie*, we considered whether § 3664(d)(5) authorized the district court to reopen an already entered restitution order *sua sponte* simply because it had reconsidered the wisdom of its order. We concluded that the MVRA grants the district court no such authority. At the same time, we took pains to emphasize in *Bedonie* that our decision did *not* limit the authority of a district court to "'hold[] open' . . . a restitution issue at the original sentencing" pending receipt of facts needed to enter an initial restitution order. *Id*. at 1129. This, of course, is precisely the case we now face: whether and to what degree a "holding open" of the restitution question past the original sentencing hearing and the statutory deadline is permissible – not whether and to what degree a district court's *sua sponte reopening* of an existing restitution order is statutorily authorized.

A copy of the corrected opinion is attached, filed nunc pro tunc to May 27, 2009.

The petition for rehearing en banc was transmitted to all of the judges of the court who are in regular active service. As no member of the panel and no judge in regular active service on the court requested that the court be polled, that petition is denied.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

May 27, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

       Plaintiff-Appellee,

v.

BRIAN RUSSELL DOLAN,

       Defendant-Appellant.

No. 08-2104

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 06-CR-2173-RB)**

---

Sara N. Sanchez, of Sheehan, Sheehan & Steltzner, P.A., Albuquerque, New Mexico, for Defendant-Appellant.

Terri J. Abernathy, Assistant United States Attorney (Gregory J. Fouratt, United States Attorney with her on the brief), Las Cruces, New Mexico, for Plaintiff-Appellee.

---

Before **MURPHY, ANDERSON,** and **GORSUCH**, Circuit Judges.

---

**GORSUCH**, Circuit Judge.

---

Brian Dolan viciously attacked a hitchhiker, leaving his victim by the side of the road bleeding, unconscious, with a great many broken bones. Eventually, officers found the hitchhiker and rushed him to a hospital. He survived, but his

medical expenses topped $100,000.  When it came time to sentence Mr. Dolan for his assault, the district court ordered him not only to serve 21 months in prison but to pay $250 monthly in restitution.  Before us, Mr. Dolan doesn't challenge his prison sentence but does say his victim should get nothing.  He contends that the district court's restitution order is void because it was entered too late, after a statutory deadline passed.  Even if the district court had the power to enter an untimely restitution award, Mr. Dolan argues, $250 per month is more than he can afford.

We reject both arguments.  The district court's restitution order was undoubtedly late, coming after the deadline prescribed by the Mandatory Victims Restitution Act.  But a tardy restitution order is not an invalid one.  Rather than creating a jurisdictional bar to untimely restitution orders, the MVRA's deadline seeks to prod the government into ensuring victims swift compensation.  Sometimes, of course, the government is not so easily prodded.  When that happens – when the MVRA's deadline passes without a restitution order entered – the affected victim may well have cause to complain, and may even seek a mandamus order compelling action.  But the defendant does not get off the hook.  Neither can we say that the district court abused its discretion in pegging Mr. Dolan's monthly restitution payments at $250, given the record before us.

I

One evening, Mr. Dolan picked up an acquaintance and fellow tribe member who was hitchhiking on a road inside the Mescalero Indian Reservation. At some point, the pair began to argue. The argument grew heated, and eventually Mr. Dolan parked his car so the men could fight. The encounter proved a brutal one for the hitchhiker. He later reported that he suffered a fractured nose, a broken wrist, a fractured leg, a spinal injury, broken ribs, and a hematoma in his head. Mr. Dolan left the hitchhiker lying on the side of the road and drove off. Once home, he told his sister, Deanna Dolan, of the assault. In turn, Ms. Dolan alerted the Bureau of Indian Affairs ("BIA") police. A responding BIA officer eventually found the hitchhiker unconscious and bleeding on the roadside. The hitchhiker was treated briefly at the scene and then helicoptered to a hospital in El Paso, Texas.

For his part, Mr. Dolan was apprehended and pled guilty to assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 1153 and 113(a)(6). On July 30, 2007, the district court sentenced Mr. Dolan to 21 months' imprisonment. At the sentencing hearing, the court also noted that restitution was required by the MVRA. But, because it did not yet have sufficient information as to the amount of restitution owed, the court "le[ft] that matter open, pending receipt of additional information." The court then informed Mr. Dolan that he should "anticipate that such an award will be made in the future." The district

court's judgment, entered on August 8, 2007, indicated that restitution was applicable but that the court did not yet have sufficient information to set an appropriate amount.

On October 5, 2007, the probation office reported that it now had enough information to calculate a restitution award. The office estimated the victim's medical care cost at $105,559.78. It provided the court with documentation for this figure and recommended that the court order Mr. Dolan to pay that amount in restitution. The probation office also indicated that, "[p]ursuant to [18 U.S.C. §] 3664(d)(5)" of the MVRA, "the Court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing, which in this case shall be October 28, 2007."[1]

It is here things get tricky. The district court did not hold a hearing for a final determination on restitution by October 28, 2007, as required by § 3664(d)(5), but instead waited until February 4, 2008. At the February hearing, Mr. Dolan's counsel argued that the court no longer had authority to order

---

[1] 18 U.S.C. § 3664(d)(5) provides: "If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing. If the victim subsequently discovers further losses, the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order. Such order may be granted only upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief."

restitution because more than 90 days had passed since the entry of Mr. Dolan's sentence. The court ordered briefing on that question, as well as on Mr. Dolan's ability to pay. A hearing followed and, in due course, the district court issued a memorandum opinion and order. In its order, the court candidly acknowledged that it had erred "in not complying with the 90-day requirement," but held that § 3664(d)(5) did not deprive it of jurisdiction to enter a restitution award after the 90-day deadline.

The district court then considered how much restitution Mr. Dolan should pay. The court noted that Mr. Dolan held essentially no assets, had substance abuse problems, and, at the time of the offense, was unemployed. But the court also observed that Mr. Dolan receives an annual tribal stipend of $575 and obtained a GED while incarcerated, thus enhancing his employment potential on release (which has since occurred). Based on Mr. Dolan's "lack of financial resources, income, assets, and potential for future earnings," the district court found that he would be unable to pay "any significant amount of restitution now or in the foreseeable future." Still, the court believed that Mr. Dolan could afford monthly payments of $250, and ordered him to do so.

Mr. Dolan now appeals to us on two grounds. First, he argues that, because the district court acted outside § 3664(d)(5)'s 90-day deadline, its restitution order is void. Second, he contends that the payment schedule fails to take adequate consideration of his ability to pay. We address each contention in turn.

II

Mr. Dolan argues that the 90-day deadline set by § 3664(d)(5) is jurisdictional. Put differently, he thinks the district court's power to enter *any* restitution order expired 90 days after his sentencing on July 30, 2007. Because the district court failed to carry out its mandatory duty by the deadline, his victim (and the victim's third party insurer) should get nothing. We review *de novo* Mr. Dolan's appeal about the meaning of § 3664(d)(5), but even so we cannot agree with his interpretation of the statute. The plain language of the Act, longstanding canons of construction, the MVRA's legislative history, and our own case law all plot against his interpretation.

*First*, the language of the Act itself. As its name suggests, the Mandatory Victims Restitution Act is all about *mandating* restitution. No longer is the decision whether to order restitution for certain crimes left to the discretion of the district court. *See United States v. Taylor*, 2002 WL 1166166, at 3 (10th Cir. 2002). The absolute nature of the district court's obligation is unmistakable from the very first paragraph of the Act. There, Congress has prescribed that "*[n]otwithstanding any other provision of law*, when sentencing a defendant convicted of [an offense covered by the Act], the court *shall* order . . . restitution." 18 U.S.C. § 3663A(a)(1) (emphasis added). Plainly, Congress has decided that defendants who have committed certain offenses should *never* be able to avoid restitution.

-6-

As Mr. Dolan emphasizes, later in the Act, in § 3664(d)(5), Congress added that restitution "shall" be awarded within 90 days after sentencing.  But this deadline, while real, is no doubt encompassed within § 3663A(a)(1)'s phrase "any other provision of law."  So, while the 90-day deadline is surely a command of the Act, it can be reasonably understood only as a subsidiary command to the Act's primary and overriding directive that restitution *must* be ordered for certain crimes.  Read together, the statute thus suggests that restitution shall be awarded within 90 days but also that, notwithstanding any missed deadline, restitution must be awarded.  As the Supreme Court has explained when faced with an analogous statutory rubric, "the use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section."  *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993); *see also Liberty Maritime Corp. v. United States*, 928 F.2d 413, 416 (D.C. Cir. 1991) (explaining that notwithstanding clauses "supersede all other laws" because "[a] clearer statement is difficult to imagine") (brackets in original).

Confirming Congress's point, § 3664(d)(5) itself authorizes the district court to revise a restitution order anytime – days, months, years, or decades – after the 90-day deadline, should the victim discover additional losses caused by the defendant's conduct.  Even viewing § 3664(d)(5) in isolation, then, it is evident that Congress did not intend to divest the district court of all power over

restitution awards after 90 days. *See United States v. Moreland*, 509 F.3d 1201, 1224 (9th Cir. 2007), *vacated on other grounds by* 129 S. Ct. 997 (2009); *United States v. Cheal*, 389 F.3d 35, 48-50 (1st Cir. 2004); *United States v. Vandeberg*, 201 F.3d 805, 814 (6th Cir. 2000). *Cf.* 18 U.S.C. § 3664(k) (authorizing district courts to revise payment schedules).

Any possible lingering ambiguity on this point is dispelled by § 3664's title. *See Carter v. United States*, 530 U.S. 255, 267 (2000) (resort to statutory titles is permissible to address statutory ambiguities). As our sister circuit has observed, the subsection's title practically "advertises" the 90-day time limit's non-jurisdictional nature by declaring that it concerns the "*Procedure* for issuance and enforcement of order of restitution." 18 U.S.C. § 3664 (emphasis added); *Moreland*, 509 F.3d at 1224; *Cheal*, 389 F.3d at 48-49. Procedures for processing claims and arguments are of course important, and respect for them may be mandatory in certain circumstances when timely invoked, but they do not strip a court of subject matter jurisdiction to entertain a dispute. *See, e.g., Bowles v. Russell*, 127 S. Ct. 2360 (2007); *Kontrick v. Ryan*, 540 U.S. 443 (2004). Congress is surely well aware of this distinction between claims processing procedures and federal court subject matter jurisdiction, and it knows how to restrict the latter when it wishes to do so. The fact that Congress conceived of § 3664 as a claims processing procedure is evidence that it had no intent to do so here.

-8-

*Second*, Mr. Dolan's interpretation runs afoul not just of the statute's language and structure, but also an essential canon of statutory construction. The Supreme Court has cautioned us against "readily infer[ring] congressional intent to limit an agency's power to get a mandatory job done merely from a specification to act by a certain time." *Barnhart v. Peabody Coal*, 537 U.S. 149, 160 (2003). Where, as here, a statute seeks to "direct[] official action" by a particular deadline, the Court has directed us that a statute "needs more than a mandatory 'shall' before the grant of power can sensibly be read to expire when the job is supposed to be done." *Id.* at 161. Absent some specifically identified consequence for failing to comply with the deadline, we are obliged to read such a statute "as a spur to prompt action, not as a bar to the tardy completion of the business" Congress mandated. *Id.* at 172; *see also Regions Hosp. v. Shalala*, 522 U.S. 448, 459 n.3 (1998) (explaining that a Cabinet Secretary's failure to meet statutory deadline did "not mean that official lacked power to act beyond it"); *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 63-64 (1993) (unless a statute "specif[ies] a consequence for noncompliance with statutory timing provisions," generally we may not "impose [our] own coercive sanction"); *United States v. Montalvo-Murillo*, 495 U.S. 711, 721 (1990) ("We do not agree that we should, or can, invent a remedy to satisfy some perceived need to coerce the courts and the Government into complying with the statutory time limits."); *Brock v. Pierce County*, 476 U.S. 253, 265 (1986) (statute providing that

Secretary of Labor "shall" take action within 120 days did not divest the Secretary of authority to act beyond deadline); 3 Norman J. Singer & J.D. Shambie Singer, Sutherland on Statutes and Statutory Construction § 57:19 (6th ed.) ("The general rule is that if a provision of a statute states a time for performance of an official duty, *without any language denying performance after a specified time*, it is directory [rather than jurisdictional].") (emphasis added).

Call this the better-late-than-never principle. Congress imposes deadlines on other branches of government to prod them into ensuring the timely completion of their statutory obligations to the public, not to allow those branches the chance to avoid their obligations just by dragging their feet. It would be a strange thing indeed if a bureaucracy or court could avoid a congressional mandate by unlawful delay. As the Supreme Court has explained, its canon of construction recognizes the "great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided." *Brock*, 476 U.S. at 260 (quoting *United States v. Nashville, C. & St. L.R. Co.*, 118 U.S. 120, 125 (1886)).

Here, of course, § 3664(d)(5) requires restitution to be ordered within 90 days, and it has no other language purporting to deny district courts the authority to enter late restitution orders. The canon against a jurisdictional reading thus applies with full force. In this respect, our case is very much like the one we and

-10-

the Supreme Court faced in *Montalvo-Murillo*. *See United States v. Montalvo-Murillo*, 876 F.2d 826 (10th Cir. 1989), *rev'd by* 495 U.S. 711 (1990). The statute at issue there was the Bail Reform Act of 1984, which required district courts to hold a hearing at an arrestee's first appearance to consider whether or not the arrestee should be detained pending trial. *Montalvo-Murillo*, 495 U.S. at 714. As it happened, however, the magistrate judge assigned to the case failed to make this assessment at the arrestee's first appearance. *Id.* at 715. Reading the statute as imposing a jurisdictional deadline, the district court held that, as a result of the magistrate judge's oversight, it lacked authority to detain the defendant and was bound to release him. *Id.* at 716. This court concurred with the district court's analysis, *Montalvo-Murillo*, 876 F.2d at 827, but the Supreme Court reversed, explaining that it found "nothing in the statute to justify" an interpretation that the courts have no power to detain "once the statutory time for hearing has passed." *Montalvo-Murillo*, 495 U.S. at 721. To the contrary, the Court held, such an interpretation impermissibly "expos[ed] the public to an increased likelihood of violent crime by persons on bail, an evil the statute aims to prevent." *Id.* at 720. Exactly the same might be said here: Nothing in the MVRA suggests that a defendant should be freed from the obligation of paying restitution just because the district court was slow in ordering it; such a result would thwart rather than effect Congress's express desire that all victims of covered crimes receive restitution.

-11-

Of course, mandatory ("shall") deadlines abound in other contexts and are often interpreted as jurisdictional. So, for example, the Supreme Court recently found jurisdictional a statutory deadline prescribing the time period in which a notice of appeal must be filed. *Bowles*, 127 S. Ct. at 2362. How, then, can we explain the difference between our case and those like *Bowles*? While no doubt there are other points of distinction, most critical for our purposes is this one: The statute at issue in *Bowles* affords all parties a discretionary opportunity to appeal if they meet a deadline, while the statutes at issue in *Montalvo-Murrilo*, *Barnhart*, and our case impose mandatory obligations on government officials to perform duties on behalf of the public. The former statute pertains to all parties; the others only to governmental actions designed to advance a congressionally identified public interest. The former affords a discretionary opportunity; the other concerns a mandatory obligation. In this latter respect, *Bowles* is something like the father who tells his daughter, "to receive ice cream, you shall eat all your dinner by 7 o'clock." Meanwhile, *Montalvo-Murillo*, *Barnhart*, and our case are more like the father who tells his daughter "you shall eat everything on your plate and you shall do it by 7 o'clock." In the first example, the child won't receive ice cream if dinner remains on the plate after 7, but the choice is the child's. In the second example, dinner had better be eaten by the deadline, but even if it is not, no one would expect the child to be free to skip off to bed without clearing her

-12-

plate.  So it is with the MVRA – district courts *must* order restitution by the deadline, but even if they are late they cannot avoid the restitution obligation.

*Third*, while the Supreme Court has acknowledged that legislative history can sometimes prove "[a] murky, ambiguous, and contradictory" business, *Exxon Mobil Corp. v. Allapattah Servs. Inc.*, 545 U.S. 546, 568 (2005), it has sometimes studied that history for guidance in analogous cases, *see, e.g.*, *Barnhart*, 537 U.S. at 165-66 (2003); *Montalvo-Murillo*, 495 U.S. at 720; *Brock*, 476 U.S. at 263-65. Doing so may not be strictly necessary in this case in light of all we have said already, but any such examination only reinforces our conclusion.

Mr. Dolan submits that the Senate Committee Report aids his cause when it discusses "the need for finality and certainty in the sentencing process" and indicates that this need "dictates that th[e] determination [of restitution] be made quickly."  S. Rep. 104-179, at 20 (1995).  But Mr. Dolan misses the point of this discussion.  The Committee Report makes plain that its emphasis on the need for speed and finality arises out of concern for victims, not victimizers.  The Report proceeds to explain that the "*sole* due process interest of the defendant being protected during the sentencing phase" isn't the right to a speedy determination, but only "the right not to be sentenced on the basis of invalid premises or inaccurate information." *Id.* (emphasis added).  By contrast, when it comes to victims, the Report stresses that "justice cannot be considered served until full restitution is made." *Id.*  In the Committee's words, "[i]t is essential that the

-13-

criminal justice system recognize the impact that crime has on the victim, and, to the extent possible, ensure that [the] offender be held accountable to repay these costs." *Id.* at 18. As we have explained previously, any complete examination of the Report or the entirety of the Act's legislative history can fairly lead only to the conclusion that "Congress intended the 90 day limitation period to protect victims against the dissipation of defendants' assets and not to protect defendants from a drawn-out sentencing process or to establish finality." *United States v. Dando*, 287 F.3d 1007, 1010 n.4 (10th Cir. 2002).

*Finally*, our holding today is in full harmony with our prior decisions in *Dando* and *United States v. Reano*, 298 F.3d 1208 (10th Cir. 2002). In both cases, we upheld the authority of a district court to enter a restitution order after § 3664(d)(5)'s 90-day deadline – results that strongly suggest the deadline's non-jurisdictional nature.

Mr. Dolan seeks to avoid this conclusion by stressing that we allowed late-entered restitution orders in *Dando* and *Reano* only because the defendants in those cases were at least partially responsible for the delay. Here, by contrast, Mr. Dolan notes, he is not at all to blame for the missed deadline. On this basis, Mr. Dolan submits, neither *Dando* or *Reano* can control our decision.

To some extent, Mr. Dolan is surely right. Neither *Dando* nor *Reano* had occasion to address the question before us today and neither, strictly speaking, controls our disposition. In *Dando*, we held the 90-day deadline "tolled" by

-14-

virtue of the defendant's request for a continuance and evidentiary hearing. 287 F.3d at 1011. In *Reano*, we held that the 90-day period was "tolled" by the defendant's appeal of a restitution award. 298 F.3d at 1211-12. But even spotting all this to Mr. Dolan, the fact remains that in neither *Dando* nor *Reano* did we hold that a failure to order restitution before the 90-day deadline deprived the district court of jurisdiction to act. In both cases, we allowed late-entered restitution orders. And there is nothing in the language, structure, or history of the statute to suggest that the MVRA imposes a jurisdictional limit on the district court's authority to award restitution when the government or district court is at fault for the delay but not when the defendant is to blame.

Put differently, while neither *Dando* or *Reano* addressed the question now before us – what to do about delay caused by the government or district court, rather than by the defendant – neither case is in any way inconsistent with our holding today that § 3664(d)(5)'s deadline is non-jurisdictional. And it is surely notable that our decision today is consistent not only with our prior precedent but with the decisions of the First, Second, Fourth, and Ninth Circuits, each of which has held, as we do, that the passing of § 3664(d)(5)'s deadline does not toll the death knell of the district court's subject matter jurisdiction. *See United States v. Douglas*, 525 F.3d 225, 252-53 (2d Cir. 2008); *Moreland*, 509 F.3d at 1224;

*United States v. Johnson*, 400 F.3d 187, 198-99 (4th Cir. 2005); *Cheal*, 389 F.3d at 48-50.[2]

Having concluded that the MVRA's deadline seeks to spur prompt restitution orders, not spurn belated ones, the question naturally arises whether *any* remedy exists for a district court's failure to comply with the 90-day deadline. The MVRA is of course silent on this score, and we have read the 90-day deadline as non-jurisdictional in part precisely because of that silence. In these circumstances, the Supreme Court has sometimes indicated that "[w]e do not agree that we should, or can, invent a remedy to satisfy some perceived need to coerce the courts and the Government into complying with the statutory time limits. Magistrates and district judges can be presumed to insist upon compliance with the law[.]" *Montalvo-Murillo*, 495 U.S. at 721. Arguably, as well, there is no need for courts to "invent" a remedy given the existence of the All Writs Act.

---

[2] The Sixth Circuit appears to have decisions on both sides of the question. *Compare Vandeberg*, 201 F.3d at 814 *with United States Jolivette*, 257 F.3d 581, 584 (6th Cir. 2001). The Seventh Circuit also arguably appears to have competing trends in its jurisprudence. *Compare United States v. Farr*, 419 F.3d 621, 625 (7th Cir. 2005) (invalidating restitution order entered more than 90 days after sentencing) *with United States v. Grimes*, 173 F.3d 634, 639 (7th Cir. 1999) (defendant not prejudiced by district court's failure to identify within 90 days of sentence all the crime victims entitled to restitution). *See also United States v. Maung*, 267 F.3d 1113, 1122 (11th Cir. 2001) (invalidating restitution order entered more than 90 days after sentencing but reserving question whether restitution could be validly entered after the deadline if the delay was caused by the "defendant's bad faith delay"); *United States v. Stevens*, 211 F.3d 1, 5 (2d Cir. 2000) (holding that 90-day deadline may be tolled by defendant's purposeful misconduct).

-16-

Should a district court fail to comply with the 90-day deadline, it would be hardly surprising if a victim sought and obtained a writ of mandamus to compel the district court to enter a restitution order forthwith. *See In re Antrobus*, 519 F.3d 1123, 1124 (10th Cir. 2008) (noting that one of the traditional offices of the writ has been to compel an inferior court "to exercise its authority when it is its duty to do so") (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980) (per curiam)).

While saying all this, we also must acknowledge that some of our sister circuits have held out the possibility that, if a defendant could establish prejudice arising from the district court's failure to enter restitution within the 90-day deadline, they might well craft some remedy to address any such prejudice. *See Moreland*, 509 F.3d at 1224-25; *Johnson*, 400 F.3d at 199; *see also Montalvo-Murillo*, 495 U.S. at 721-22 (emphasizing that defendant was not prejudiced by court's failure to hold hearing in conformity with Bail Reform Act's timing requirements). For reasons we have already articulated, we are unsure whether Congress has authorized us to excuse a defendant from the obligation to pay restitution for offenses covered by the MVRA under any circumstances. Neither is it altogether obvious how a defendant might be prejudiced by an untimely restitution order: it would seem "*a fortiori* more than highly probable" that a delayed restitution order would "not adversely affect [the defendant's] substantial rights." *United States v. Stevens*, 211 F.3d 1, 6 (2d Cir. 2000). After all, it is

-17-

usually better to pay a dollar tomorrow than to pay one today. Happily, however, we can leave the final resolution of all this for another case because, in the one actually before us, Mr. Dolan does not purport to identify any way in which his substantial rights were infringed by the district court's decision requiring him to pay restitution later rather than sooner.

While we today decide the 90-day deadline is not a jurisdictional limit on the district court's authority to order restitution, our holding should *not* be misconstrued as suggesting the government has the discretion to seek, and the district court has discretion to enter, restitution on any time schedule they find convenient. The law remains that the district court *shall* enter a restitution order within 90 days. And this directive serves important congressionally identified purposes – to ensure victims timely compensation and to prevent the potential dissipation of defendants' assets. District courts and the government must take steps to ensure compliance with the MVRA's deadline and the public interests it serves, just as they must with any other congressional command. Though district courts do not lose the authority to enter restitution after 90 days, the law remains the law and courts and the government alike are bound to follow it. As the Supreme Court explained in *Montalvo-Murillo*, though "the sanction for breach is not loss of all later powers to act," the duty remains a "mandatory" one. 495 U.S.

at 718.  Failure to abide Congress's instruction still "represent[s] a default on a statutory duty."  *Barnhart*, 537 U.S. at 157.[3]

## III

Having said that the district court retained authority to enter a restitution award despite its failure to comply with the 90-day deadline, we must still ask whether the amount the district court ordered Mr. Dolan to pay each month, $250, adequately accounts for his financial condition.

While the MVRA requires that the total amount of restitution be ordered "without consideration of the economic circumstances of the defendant,"  18 U.S.C. § 3664(f)(1)(A), the district court can and must consider the defendant's economic circumstances in fashioning a restitution *payment schedule*, *id.* at § 3664(f)(2).  Specifically, the district court must consider "(A) the financial resources and other assets of the defendant, including whether any of the assets

---

[3]  Mr. Dolan argues that our holding conflicts with *United States v. Bedonie*, 413 F.3d 1126 (10th Cir. 2005).  It does no such thing.  In *Bedonie*, we considered whether § 3664(d)(5) authorized the district court to reopen an already entered restitution order *sua sponte* simply because it had reconsidered the wisdom of its order.  We concluded that the MVRA grants the district court no such authority.  At the same time, we took pains to emphasize in *Bedonie* that our decision did *not* limit the authority of a district court to "'hold[] open' . . . a restitution issue at the original sentencing" pending receipt of facts needed to enter an initial restitution order.  *Id.* at 1129.  This, of course, is precisely the case we now face: whether and to what degree a "holding open" of the restitution question past the original sentencing hearing and the statutory deadline is permissible – not whether and to what degree a district court's *sua sponte reopening* of an existing restitution order is statutorily authorized.

-19-

are jointly controlled; (B) projected earnings and other income of the defendant; and (C) any financial obligations of the defendant[,] including obligations to dependents." *Id.* If, after consideration of these factors, the court finds that "the economic circumstances of the defendant do not allow . . . for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments," the district court can direct the defendant to make "nominal periodic payments." *Id.* at § 3664(f)(3)(B).

Mr. Dolan does not (and cannot) argue that the district court failed to consider his economic circumstances. The district court engaged in a thorough examination of Mr. Dolan's financial resources, his projected earnings, and his financial obligations. Dist. Ct. Op. at 15. Neither does (or could) he argue that the facts found by the district court regarding his economic circumstances were erroneous; before us they are undisputed. Instead, Mr. Dolan argues only that, in light of the facts found by the district court as part of its duty to consider his ability to pay restitution, $250 per month is simply too high.

We have previously explained that a district court enjoys "substantial discretion" in setting monthly payment schedules, *see United States v. Wilson*, 416 F.3d 1164, 1170 (10th Cir. 2005), and does not abuse this discretion so long as "the evidence indicates a defendant has some assets or earning potential and thus possibly may be able to pay the amount ordered." *United States v. Rogat*,

924 F.2d 983, 985 (10th Cir. 1991).[4]  Admittedly, asking whether a defendant

possibly may be able to pay the amount ordered is a very narrow inquiry and

surely poses the defendant with a daunting hurdle.  But the limited nature of our

appellate inquiry becomes sensible when considered in light of the MVRA's

purpose of ensuring maximum restitution to victims; its requirement that

restitution awards take account of the defendant's future earning potential, 18

U.S.C. § 3664(f)(2)(B), an exercise that necessarily involves the district court in

"a delicate balancing of diverse, sometimes incomparable factors, some which not

only lack certainty but may indeed be based on mere probabilities, expectations,

guesswork, even a 'hunch,'" *United States v. Ismail*, 219 F.3d 76, 78 (2d Cir.

2000); as well as the fact that no restitution payment schedule is ever fixed

immutably in stone.  As we have already alluded to, if and whenever there is a

"material change in the defendant's economic circumstances," the MVRA

authorizes the district court to adjust the defendant's payment schedule "as the

interests of justice require."  18 U.S.C. § 3664(k).  So if a district court's

assessment of a defendant's future earning potential doesn't pan out and its

---

[4]  In *Rogat*, we were asked to determine whether a restitution order entered pursuant to the Victims and Witness Protection Act was more than the defendant was able to pay.  Given the strong similarities between that statute and the MVRA, however, it provides appropriate guidance here.  *See, e.g.*, *United States v. Mahone*, 453 F.3d 68, 74 & n.3 (1st Cir. 2006); *United States v. Randle*, 324 F.3d 550, 556 n.3 (7th Cir. 2003).  In fact, we have previously relied on *Rogat* in evaluating a challenge to a payment schedule imposed under the MVRA, albeit in an unpublished decision.  *See Taylor*, 2002 WL 1166166, at 3.

payment schedule proves too onerous, the defendant is not stuck, overwhelmed with an obligation he cannot meet and without the means to seek redress. Congress has specifically directed that the doors of the district court should remain open to the defendant, and that the court is free to revise its payment schedule at any time.

Applying our governing standard of review to this case, we are constrained to affirm. We admit many record facts suggest that Mr. Dolan could have difficulty paying the amount of restitution ordered. His income is small, his employment history poor, his substance abuse problem apparent. There is, however, other evidence in the record suggesting that it is not impossible for Mr. Dolan to meet his monthly payment obligation. The record shows that Mr. Dolan has a GED, has been able to win jobs in the past, is physically able to work, and has few financial obligations because he lives with and is supported by his aunt. The record also reveals that he receives a modest annual stipend from his tribe. Based on the evidence before us, we cannot disagree with the district court that Mr. Dolan has the potential to win a job and earn a living that would allow him to meet a monthly obligation of $250; neither can we ignore the fact we and others have upheld similar restitution orders on similar records against similar challenges. *See, e.g.*, *Wilson*, 416 F.3d 1164, 1170 (10th Cir. 2005) (upholding restitution order requiring indigent defendant to pay restitution while incarcerated because he did not show that there were insufficient opportunities to work in

prison or that he was physically unable to do so); *Rogat*, 924 F.2d at 986 (upholding restitution award against indigent defendants based on their future earnings potential); *Ismail*, 219 F.3d 76, 78 (same); *United States v. Booth*, 309 F.3d 566, 576 (9th Cir. 2002) (upholding $500 per month payment schedule for defendant with "financial difficulties" on the grounds that he had worked in the past and "might reasonably look forward to being able to pay after his term of imprisonment").  Should events as they unfold reveal a material change in Mr. Dolan's circumstances, he and the district court can and will, pursuant to § 3664(k), adjust the payment schedule.

*Affirmed*.