(Slip Opinion) OCTOBER TERM, 2009 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## DOLAN *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

No. 09–367. Argued April 20, 2010—Decided June 14, 2010

Petitioner Dolan pleaded guilty to assault resulting in serious bodily injury and entered into a plea agreement, which stated that the District Court could order restitution for his victim. Dolan's presentence report also noted that restitution was required, but did not recommend an amount because of a lack of information on hospital costs and lost wages. The Mandatory Victims Restitution Act provides that "if the victim's losses are not ascertainable by the date that is 10 days prior to sentencing," the court "shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 18 U. S. C. §3664(d)(5). On July 30, the District Court held a sentencing hearing and imposed a sentence of imprisonment and supervised release. On August 8, the court entered a judgment, stating that restitution was "applicable" but leaving open the amount of restitution given that no information had yet "been received regarding possible restitution payments." On October 5, 67 days later, an addendum documenting the restitution amount was added to the presentence report. The court did not set a hearing until February 4, about three months after the 90-day deadline had expired. At the hearing, Dolan argued that because that deadline had passed, the law no longer authorized restitution. Disagreeing, the court ordered restitution, and the Tenth Circuit affirmed.

*Held:* A sentencing court that misses the 90-day deadline nonetheless retains the power to order restitution—at least where, as here, that court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount. Pp. 3–15.

   (a) To determine the consequences of a missed deadline where, as here, the statute does not specify them, this Court looks to the statu-

tory language, to the relevant context, and to what they reveal about the deadline's purposes. A "jurisdictional" deadline's expiration prevents a court from permitting or taking the action to which the statute attached the deadline. The prohibition is absolute. It cannot be waived or extended for equitable reasons. See *John R. Sand & Gravel Co.* v. *United States*, 552 U. S. 130, 133–134. Other deadlines are "claims-processing rules," which do not limit a court's jurisdiction, but regulate the timing of motions or claims brought before the court. Unless a party points out that another litigant has missed such a deadline, the party forfeits the deadline's protection. See, *e.g., Kontrick* v. *Ryan*, 540 U. S. 443, 454–456. In other instances, a deadline seeks speed by creating a time-related directive that is legally enforceable but does not deprive the judge or other public official of the power to take the action even if the deadline is missed. See, *e.g., United States* v. *Montalvo-Murillo*, 495 U. S. 711, 722. In light of its language, context, and purposes, the statute at issue sets forth this third kind of limitation. The fact that a sentencing court misses the 90-day deadline, even through its own or the Government's fault, does not deprive the court of the power to order restitution. Pp. 3–5.

(b) Several considerations lead to this conclusion. First, where, as here, a statute "does not specify a consequence for noncompliance with" its "timing provisions," "federal courts will not" ordinarily "impose their own coercive sanction." *United States* v. *James Daniel Good Real Property*, 510 U. S. 43, 63. A statute's use of "shall" alone, see §3664(d)(5), does not necessarily bar judges from taking the action to which the missed deadline refers. Second, the statute places primary weight on, and emphasizes the importance of, imposing restitution upon those convicted of certain federal crimes. See §3663A. Third, the statute's procedural provisions reinforce this substantive purpose. They reveal that the statute seeks speed primarily to help crime victims secure prompt restitution, not to provide defendants with certainty as to the amount of their liability. Fourth, to read the statute as depriving the sentencing court of the power to order restitution would harm the victims, who likely bear no responsibility for the deadline's being missed and whom the statute seeks to benefit. That kind of harm to third parties provides a strong indication that Congress did not intend a missed deadline to work a forfeiture. See *Brock* v. *Pierce County*, 476 U. S. 253, 262. Fifth, the Court has interpreted similar statutes, such as the Bail Reform Act of 1984, similarly. See *Montalvo-Murillo, supra,* at 721. Sixth, the defendant normally can mitigate potential harm  by telling the court that he fears the deadline will be, or just has been, missed, and the court will likely set a timely hearing or take other statutorily required action. Pp. 5–10.

  (c) This Court has not understated the potential harm to a defendant of a missed deadline. Petitioner claims that because the sentence will not be a "final judgment" for appeal purposes without a definitive determination of the restitution amount, to delay that determination beyond the deadline is to delay his ability to appeal. But a defendant who knows that restitution will be ordered and is aware of the amount can usually avoid additional delay by asking for a timely hearing; if the court refuses, he could seek mandamus. And in the unlikely instance that delay causes the defendant prejudice, he remains free to ask the appellate court to take that fact and any other equitable considerations into account on review. This does not mean that the Court accepts petitioner's premise that a sentencing judgment is not "final" until the restitution amount is determined. Although that question need not be decided here, strong arguments favor the appealability of the initial judgment irrespective of the delay in determining the restitution amount. A judgment imposing "'discipline'" may still be "freighted with sufficiently substantial indicia of finality to support an appeal." *Corey* v. *United States*, 375 U. S. 169, 174. And several statutes say that a "judgment of conviction" that "includes" "imprisonment" is a "final judgment." *E.g.,* 18 U. S. C. §3582(b). Moreover, §3664(*o*) provides that a "sentence that imposes an order of restitution," such as the later restitution order here, "is a final judgment." Even assuming that the rule of lenity could be applied to a statutory time provision in the criminal context, here there is no statutory ambiguity sufficiently grievous to warrant its application in this case. *Muscarello* v. *United States*, 524 U. S. 125, 139. Pp. 10–15.

571 F. 3d 1022, affirmed.

  BREYER, J., delivered the opinion of the Court, in which THOMAS, GINSBURG, ALITO, and SOTOMAYOR, JJ., joined. ROBERTS, C. J., filed a dissenting opinion, in which STEVENS, SCALIA, and KENNEDY, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 09–367

BRIAN RUSSELL DOLAN, PETITIONER *v.*
UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE TENTH CIRCUIT

[June 14, 2010]

JUSTICE BREYER delivered the opinion of the Court.

This case concerns the remedy for missing a statutory deadline. The statute in question focuses upon mandatory restitution for victims of crimes. It provides that "the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 18 U. S. C. §3664(d)(5). We hold that a sentencing court that misses the 90-day deadline nonetheless retains the power to order restitution—at least where, as here, the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount.

I

On February 8, 2007, petitioner Brian Dolan pleaded guilty to a federal charge of assault resulting in serious bodily injury. 18 U. S. C. §§113(a)(6), 1153; App. 17. He entered into a plea agreement that stated that "restitution . . . may be ordered by the Court." *Id.*, at 18. The presentence report, provided to the court by the end of May, noted that restitution was required. But, lacking precise information about hospital costs and lost wages, it did not

recommend a restitution amount.  *Id.*, at 27.

On July 30, the District Court held Dolan's sentencing hearing.  The judge sentenced Dolan to 21 months' imprisonment along with 3 years of supervised release.  *Id.*, at 38.  The judge, aware that restitution was "mandatory," said that there was "insufficient information on the record at this time regarding possible restitution payments that may be owed," that he would "leave that matter open, pending the receipt of additional information," and that Dolan could "anticipate that such an award will be made in the future."  *Id.*, at 39–40.  A few days later (August 8) the court entered a judgment, which, among other things, stated:

> "Pursuant to the Mandatory Restitution Act, restitution is applicable; however, no information has been received regarding possible restitution payments that may be owed.  Therefore, the Court will not order restitution at this time."  *Id.*, at 49 (boldface deleted).

The probation office later prepared an addendum to the presentence report, dated October 5, which reflected the views of the parties, and which the judge later indicated he had received.  *Id.*, at 54.  The addendum documents the "total amount of restitution" due in the case (about $105,000).  *Id.,* at 52.  Its date, October 5, is 67 days after Dolan's July 30 sentencing and 23 days before the statute's "90 days after sentencing" deadline would expire.  §3664(d)(5).

The sentencing court nonetheless set a restitution hearing for February 4, 2008—about three months after the 90-day deadline expired.  As far as the record shows, no one asked the court for an earlier hearing.  At the hearing, Dolan pointed out that the 90-day deadline had passed.  *Id.*, at 54–55.  And he argued that the law no longer authorized the court to order restitution.  *Id.*, at 60–64.

The court disagreed and ordered restitution.   See

Memorandum Opinion and Restitution Order in No. CR 06–02173–RB (D NM, Apr. 24, 2008), App. to Pet. for Cert. 47a. The Court of Appeals affirmed. 571 F. 3d 1022 (CA10 2009). And, in light of differences among the Courts of Appeals, we granted Dolan's petition for certiorari on the question. Compare *United States* v. *Cheal*, 389 F. 3d 35 (CA1 2004) (recognizing court's authority to enter restitution order past 90 days) and *United States* v. *Balentine*, 569 F. 3d 801 (CA8 2009) (same), with *United States* v. *Maung*, 267 F. 3d 1113 (CA11 2001) (finding no such authority), and *United States* v. *Farr*, 419 F. 3d 621 (CA7 2005) (same).

## II
### A

There is no doubt in this case that the court missed the 90-day statutory deadline "for the final determination of the victim's losses." §3664(d)(5). No one has offered any excuse for the court's doing so. Nor did any party seek an extension or "tolling" of the 90 days for equitable or for other reasons. All the information needed to determine the requisite restitution amount was available before the 90-day period had ended. Thus, the question before us concerns the consequences of the missed deadline where, as here, the statute does not specify them.

In answering this kind of question, this Court has looked to statutory language, to the relevant context, and to what they reveal about the purposes that a time limit is designed to serve. The Court's answers have varied depending upon the particular statute and time limit at issue. Sometimes we have found that the statute in question imposes a "jurisdictional" condition upon, for example, a court's authority to hear a case, to consider pleadings, or to act upon motions that a party seeks to file. See, *e.g., Bowles* v. *Russell*, 551 U. S. 205 (2007). But cf. *Kontrick* v. *Ryan*, 540 U. S. 443, 455 (2004) (finding bankruptcy rule

did not show legislative intent to "delineat[e] the classes of cases" and "persons" properly "within a court's adjudicatory authority"); see also *Reed Elsevier, Inc.* v. *Muchnick*, 559 U. S. \_\_\_, \_\_\_ (2010) (slip op., at 5–6) (discussing use of term "jurisdictional"). The expiration of a "jurisdictional" deadline prevents the court from permitting or taking the action to which the statute attached the deadline. The prohibition is absolute. The parties cannot waive it, nor can a court extend that deadline for equitable reasons. See *John R. Sand & Gravel Co.* v. *United States*, 552 U. S. 130, 133–134 (2008).

In other instances, we have found that certain deadlines are more ordinary "claims-processing rules," rules that do not limit a court's jurisdiction, but rather regulate the timing of motions or claims brought before the court. Unless a party points out to the court that another litigant has missed such a deadline, the party forfeits the deadline's protection. See, *e.g., Kontrick* v. *Ryan, supra*, at 454–456 (60-day bankruptcy rule deadline for creditor's objection to debtor discharge); *Eberhart* v. *United States*, 546 U. S. 12, 19 (2005) *(per curiam)* (7-day criminal rule deadline for filing motion for a new trial).

In still other instances, we have found that a deadline seeks speed by creating a time-related directive that is legally enforceable but does not deprive a judge or other public official of the power to take the action to which the deadline applies if the deadline is missed. See, *e.g., United States* v. *Montalvo-Murillo*, 495 U. S. 711, 722 (1990) (missed deadline for holding bail detention hearing does not require judge to release defendant); *Brock* v. *Pierce County*, 476 U. S. 253, 266 (1986) (missed deadline for making final determination as to misuse of federal grant funds does not prevent later recovery of funds); *Barnhart* v. *Peabody Coal Co.*, 537 U. S. 149, 171–172 (2003) (missed deadline for assigning industry retiree benefits does not prevent later award of benefits).

After examining the language, the context, and the purposes of the statute, we conclude that the provision before us sets forth this third kind of limitation. The fact that a sentencing court misses the statute's 90-day deadline, even through its own fault or that of the Government, does not deprive the court of the power to order restitution.

B

Several considerations lead us to this conclusion. *First*, where, as here, a statute "does not specify a consequence for noncompliance with" its "timing provisions," "federal courts will not in the ordinary course impose their own coercive sanction." *United States* v. *James Daniel Good Real Property*, 510 U. S. 43, 63 (1993); see also *Montalvo-Murillo*, *supra*, at 717–721. Cf., *e.g.,* Speedy Trial Act, 18 U. S. C. §3161(c)(1); §3162(a)(2) (statute specifying that missed 70-day deadline requires dismissal of indictment); *Zedner* v. *United States*, 547 U. S. 489, 507–509 (2006) ("The sanction for a violation of the Act is dismissal").

We concede that the statute here uses the word "shall," §3664(d)(5), but a statute's use of that word alone has not always led this Court to interpret statutes to bar judges (or other officials) from taking the action to which a missed statutory deadline refers. See, *e.g., Montalvo-Murillo, supra,* at 718–719 (use of word "shall" in context of bail hearing makes duty "mandatory" but does not mean that the "sanction for breach" is "loss of all later powers to act"); *Brock*, *supra*, at 262 (same in context of misuse of federal funds); *Barnhart*, *supra*, at 158–163 (same in context of benefits assignments). See also *Regions Hospital* v. *Shalala*, 522 U. S. 448, 459, n. 3 (1998) (same in respect to federal official's reporting date).

*Second,* the statute's text places primary weight upon, and emphasizes the importance of, imposing restitution upon those convicted of certain federal crimes. Amending

an older provision that left restitution to the sentencing judge's discretion, the statute before us (entitled "The Mandatory Victims Restitution Act of 1996") says "*[n]otwithstanding any other provision of law*, when sentencing a defendant convicted of [a specified] offense . . . , the court *shall* order . . . that the defendant make restitution to the victim of the offense." §3663A(a)(1) (emphasis added); cf. §3663(a)(1) (stating that a court "may" order restitution when sentencing defendants convicted of other specified crimes). The Act goes on to provide that restitution shall be ordered in the "full amount of each victim's losses" and "without consideration of the economic circumstances of the defendant." §3664(f)(1)(A).

*Third*, the Act's procedural provisions reinforce this substantive purpose, namely, that the statute seeks primarily to assure that victims of a crime receive full restitution. To be sure speed is important. The statute requires a sentencing judge to order the probation office to prepare a report providing "a complete accounting of the losses to each victim, any restitution owed pursuant to a plea agreement, and information relating to the economic circumstances of each defendant." §3664(a). The prosecutor, after consulting with all identified victims, must "promptly provide" a listing of the amount subject to restitution "*not later than 60 days prior to the date initially set for sentencing.*" §3664(d)(1) (emphasis added). And the provision before us says:

> "If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." §3664(d)(5).

But the statute seeks speed primarily to help the victims of crime and only secondarily to help the defendant. Thus,

in the sentence following the language we have just quoted, the statute continues:

> "If the victim subsequently discovers further losses, the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order." *Ibid.*

The sentence imposes no time limit on the victim's subsequent discovery of losses. Consequently, a court might award restitution for those losses long after the original sentence was imposed and the 90-day time limit has expired. That fact, along with the Act's main substantive objectives, is why we say that the Act's efforts to secure speedy determination of restitution is *primarily* designed to help victims of crime secure prompt restitution rather than to provide defendants with certainty as to the amount of their liability. Cf. S. Rep. No. 104–179, p. 20 (1995) (recognizing "the need for finality and certainty in the sentencing process," but also stating that the "sole due process interest of the defendant being protected . . . is the right not to be sentenced on the basis of invalid premises or inaccurate information"); see also *ibid.* ("[J]ustice cannot be considered served until full restitution is made").

*Fourth,* to read the statute as depriving the sentencing court of the power to order restitution would harm those—the victims of crime—who likely bear no responsibility for the deadline's being missed and whom the statute also seeks to benefit. Cf. §3664(g)(1) ("No victim shall be required to participate in any phase of a restitution order"). The potential for such harm—to third parties—normally provides a strong indication that Congress did not intend a missed deadline to work a forfeiture, here depriving a court of the power to award restitution to victims. See *Brock*, 476 U. S., at 262 (parties concede and court assumes that official can "proceed after the deadline" where "inaction" would hurt third party); see also 3 N. Singer &

J. Singer, Sutherland on Statutory Construction §57:19, pp. 73–74 (7th ed. 2008) (hereinafter Singer, Statutory Construction) (missing a deadline does not remove power to exercise a duty where there is no "language denying performance after a specified time," and especially "where a mandatory construction might do great injury to persons not at fault, as in a case where slight delay on the part of a public officer might prejudice private rights or the public interest" (footnote omitted)).

*Fifth*, we have previously interpreted similar statutes similarly. In *Montalvo-Murillo*, 495 U. S. 711, for example, we considered the Bail Reform Act of 1984, which states that a "judicial officer shall hold a hearing" to determine whether to grant bail to an arrested person and that "hearing shall be held *immediately upon the person's first appearance* before the judicial officer." (A continuance of up to five days may also be granted.) 18 U. S. C. §3142(f) (emphasis added). The judicial officer missed this deadline, but the Court held that the judicial officer need not release the detained person. Rather, "once the Government discovers that the time limits have expired, it may [still] ask for a prompt detention hearing and make its case to detain based upon the requirements set forth in the statute." 495 U. S., at 721.

The Court reasoned that "a failure to comply" with the hearing deadline "does not so subvert the procedural scheme . . . as to invalidate the hearing." *Id.*, at 717. Missing the deadline did not diminish the strength of the Government's interest in preventing release to avert the likely commission of crimes—the very objective of the Act. *Id.*, at 720. Nor would mandatory release of the detained person "proportion[ately]" repair the "inconvenience and uncertainty a timely hearing would have spared him." *Id.*, at 721.

Here, as in *Montalvo-Murillo*, neither the language nor the structure of the statute requires denying the victim

restitution in order to remedy a missed hearing deadline. As in *Montalvo-Murillo*, doing so would defeat the basic purpose of the Mandatory Victims Restitution Act. And, here, as in *Montalvo-Murillo*, that remedy does not "proportion[ately]" repair the harm caused the defendant through delay, particularly where, as here, the defendant "knew about restitution," including the likely amount, well before expiration of the 90-day time limit. App. 62. Indeed, our result here follows from *Montalvo-Murillo a fortiori,* for here delay at worst postpones the day of financial reckoning. In *Montalvo-Murillo*, delay postponed a constitutionally guaranteed bail hearing with the attached risk that the defendant would remain improperly confined in jail. See 495 U. S., at 728 (STEVENS, J., dissenting) (noting the seriousness "of the deprivation of liberty that physical detention imposes").

Nor does *Montalvo-Murillo* stand alone. The Court there found support in similar cases involving executive officials charged with carrying out mandatory public duties in a timely manner. See *id.*, at 718 (citing *French* v. *Edwards*, 13 Wall. 506, 511 (1872); *Brock, supra,* at 260). Those cases, in turn, are consistent with numerous similar decisions made by courts throughout the Nation. See, *e.g., Taylor* v. *Department of Transp.*, 260 N. W. 2d 521, 522–523 (Iowa 1977); *Hutchinson* v. *Ryan*, 154 Kan. 751, 756–757, 121 P. 2d 179, 182 (1942); *State* v. *Industrial Comm'n*, 233 Wis. 461, 466, 289 N. W. 769, 771 (1940); see also 3 Singer, Statutory Construction §57:19, at 74 (citing cases).

*Sixth,* the defendant normally can mitigate any harm that a missed deadline might cause—at least if, as here, he obtains the relevant information regarding the restitution amount before the 90-day deadline expires. A defendant who fears the deadline will be (or just has been) missed can simply tell the court, which will then likely set a timely hearing or take other statutorily required action.

See §3664(d)(4) (providing that "court may require addi-
tional documentation or hear testimony"); §3664(d)(5).
Though a deliberate failure of the sentencing court to
comply with the statute seems improbable, should that
occur, the defendant can also seek mandamus. See All
Writs Act, 28 U. S. C. §1651(a); *La Buy* v. *Howes Leather
Co.*, 352 U. S. 249 (1957). Cf. *Brock*, 476 U. S., at 260, n. 7
(noting availability of district court action to compel
agency compliance with time-related directive).

C

Petitioner Dolan, however, believes we have under-
stated the harm to a defendant that a missed deadline can
cause. To show this he makes a three-part argument: (1)
A defendant cannot appeal a sentence unless it is part of a
"final judgment"; (2) a judgment setting forth a sentence is
not "final" until it contains a definitive determination of
the amount of restitution; and (3) to delay the determina-
tion of the amount of restitution beyond the 90-day dead-
line is to delay the defendant's ability to appeal for more
than 90 days—perhaps to the point where his due process
rights are threatened. Brief for Petitioner 28–33.

The critical problem with this argument lies in its third
step. As we have said, a defendant who, like petitioner
here, knows that restitution will be ordered and is aware
of the restitution amount prior to the expiration of the 90-
day deadline can usually avoid additional delay simply by
pointing to the statute and asking the court to grant a
timely hearing. That did not happen here. And that
minimal burden on the defendant is a small cost relative
to the prospect of depriving innocent crime victims of their
due restitution. (Should the court still refuse, the defen-
dant could seek mandamus—which we believe will rarely
be necessary.)

Even in the unlikely instances where that delay does
cause the defendant prejudice—perhaps by depriving him

of evidence to rebut the claimed restitution amount—the defendant remains free to ask the court to take that fact into account upon review. That inquiry might also consider the reason for the delay and the party responsible for its cause, *i.e.*, whether the Government or the victim. Cf., *e.g., United States* v. *Stevens*, 211 F. 3d 1, 4–6 (CA2 2000) (tolling 90-day deadline for defendant's bad-faith delay); *United States* v. *Terlingo*, 327 F. 3d 216, 218–223 (CA3 2003) (same). Adopting the dissent's approach, by contrast, would permit a defendant's bad-faith delay to prevent a timely order of restitution, potentially allowing the defendant to manipulate whether restitution could be awarded at all. But since we are not presented with such a case here, we need not decide whether, or how, such potential harm or equitable considerations should be taken into consideration.

In focusing upon the argument's third step, we do not mean to imply that we accept the second premise, *i.e.*, that a sentencing judgment is not "final" until it contains a definitive determination of the amount of restitution. To the contrary, strong arguments favor the appealability of the initial judgment irrespective of the delay in determining the restitution amount. The initial judgment here imposed a sentence of imprisonment and supervised release, and stated that restitution would be awarded. This Court has previously said that a judgment that imposes "discipline" may still be "freighted with sufficiently substantial indicia of finality to support an appeal." *Corey* v. *United States*, 375 U. S. 169, 174, 175 (1963) (internal quotation marks omitted). And the Solicitor General points to statutes that say that a "judgment of conviction" that "includes" a "sentence to imprisonment" is a "final judgment." 18 U. S. C. §3582(b). So is a judgment that imposes supervised release (which can be imposed only in conjunction with a sentence of imprisonment). *Ibid.;* §3583(a). So is a judgment that imposes a fine. §3572(c).

See Tr. of Oral Arg. 33–34.

Moreover, §3664(*o*) provides that a "sentence that imposes an order of restitution," such as the later restitution order here, "is a final judgment." Thus, it is not surprising to find instances where a defendant has appealed from the entry of a judgment containing an initial sentence that includes a term of imprisonment; that same defendant has subsequently appealed from a later order setting forth the final amount of restitution; and the Court of Appeals has consolidated the two appeals and decided them together. See, *e.g., United States* v. *Stevens, supra; United States* v. *Maung,* 267 F. 3d 1113, 1117 (CA11 2001); cf. *United States* v. *Cheal,* 389 F. 3d 35, 51–53 (CA1 2004).

That the defendant can appeal from the earlier sentencing judgment makes sense, for otherwise the statutory 90-day restitution deadline, even when complied with, could delay appeals for up to 90 days. Defendants, that is, would be forced to wait three months before seeking review of their conviction when they could ordinarily do so within 14 days. See Fed. Rule App. Proc. 4(b). Nonetheless, in light of the fact that the interaction of restitution orders with appellate time limits could have consequences extending well beyond cases like the present case (where there was no appeal from the initial conviction and sentence), we simply note the strength of the arguments militating against the second step of petitioner's argument without deciding whether or when a party can, or must, appeal. We leave all such matters for another day.

The dissent, however, creates a rule that could adversely affect not just restitution, but other sentencing practices beyond the narrow circumstances presented here. Consider, for example, a judge who (currently lacking sufficient information) wishes to leave open, say, the amount of a fine, or a special condition of supervised release. In the dissent's view, the entry of any such judgment would immediately deprive the judge of the author-

ity later to fill in that blank, in the absence of a statute specifically providing otherwise. See *post,* at 1–4 (opinion of ROBERTS, C. J.). Thus, the sentencing judge would either have to (1) forgo the specific dollar amount or potential condition, or (2) wait to enter any judgment until all of the relevant information is at hand. The former alternative would sometimes deprive judges of the power to enter components of a sentence they may consider essential. The latter alternative would require the defendant to wait—perhaps months—before taking an appeal.

As we have pointed out, our precedents do not currently place the sentencing judge in any such dilemma. See *supra,* at 5, 8–9. And we need not now depart from those precedents when *this* case does not require us to do so; when the issue has not been adequately briefed; when the lower court had no opportunity to consider the argument (which the petitioner may well have forfeited); and when the rule would foreclose the current practices of some district courts and unnecessarily cabin the discretion they properly exercise over scheduling and sentencing matters. Cf., *e.g., United States* v. *Stevens, supra,* at 3; *United States* v. *Cheal, supra,* at 47 (illustrating district court practices).

Certainly there is no need to create this rule in the context of restitution, for provisions to which the dissent refers are silent about whether restitution can or cannot be ordered after an initial sentencing. See, *e.g.,* §§3551(b), (c) ("A sanction authorized by [criminal forfeiture and restitution statutes] may be imposed in addition to the [rest of the] sentence"); §3663A(c)(1) (mandatory orders of restitution "shall apply in all sentencing proceedings [for specified offenses]"). And even on the dissent's theory, the statute elsewhere provides the necessary substantive authorization: "Notwithstanding any other provision of law, when sentencing a defendant convicted of [a specified] offense . . . , *the court shall order . . . that the defendant*

*make restitution to the victim of the offense*." §3663A(a)(1)
(emphasis added).   The dissent cannot explain why a
*separate* statutory provision regarding procedures as to
when a "court shall set a date for the final determination
of the victim's losses," §3664(d)(5), automatically divests a
court of this distinct substantive authority.   While of
course that provision does not "plainly" confer "power to
act after sentencing," *post*, at 5 (emphasis deleted), neither
does it "plainly" remove it or require that all sentencing
matters be concluded at one point in time.   (And the dis-
sent's assertion, see *post*, at 6—that it uses the term "au-
thority" not in its "jurisdictional" sense, but rather in the
sense that a court lacks "authority" to "impose a sentence
above the maximum"—introduces a tenuous analogy that
may well confuse this Court's precedents regarding the
term "jurisdictional."   See *supra*, at 3–4.)

  In any event, unless one reads the relevant statute's 90-
day deadline as an ironclad limit upon the judge's author-
ity to make a final determination of the victim's losses, the
statute before us itself provides adequate authority to do
what the sentencing judge did here—essentially fill in an
amount-related blank in a judgment that made clear that
restitution was "applicable."   App. 49 (boldface deleted).
Since the sentencing judge's later order did not "correct"
an "error" in the sentence, Rule 35 does not apply.   Com-
pare Fed. Rule Crim. Proc. 35(a) with *post,* at 2–3.   Hence
the dissent's claim that there is no *other* statute that
creates authority (even were we to assume all else in its
favor, which we do not) is merely to restate the question
posed in this case, not to answer it.

  Moreover, the dissent's reading creates a serious statu-
tory anomaly.   It reads the statute as permitting a sen-
tencing judge to order restitution for a "victim" who "sub-
sequently discovers further losses" a month, a year, or 10
years after entry of the original judgment, while at the
same time depriving that judge of the power to award

restitution to a victim whose "losses are not ascertainable" within 90 days. Compare §3664(d)(5) (first sentence) with §3664(d)(5) (second sentence). How is that a sensible reading of a statute that makes restitution mandatory for victims?

Finally, petitioner asks us to apply the "rule of lenity" in favor of his reading of the statute. Dolan has not provided us with an example of an instance in which the "rule of lenity" has been applied to a statutory time provision in the criminal context. See *United States* v. *Wiltberger*, 5 Wheat. 76 (1820) (applying rule in interpreting substantive criminal statute); *Bifulco* v. *United States*, 447 U. S. 381, 387, 400 (1980) (applying rule in interpreting "penalties"). But, assuming for argument's sake that the rule might be so applied, and after considering the statute's text, structure, and purpose, we nonetheless cannot find a statutory ambiguity sufficiently "grievous" to warrant its application in this case. *Muscarello* v. *United States*, 524 U. S. 125, 139 (1998) (internal quotation marks omitted). See *Caron* v. *United States*, 524 U. S. 308, 316 (1998) (rejecting application of rule where the "ambiguous" reading "is an implausible reading of the congressional purpose").

For these reasons, the judgment of the Court of Appeals for the Tenth Circuit is

*Affirmed.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 09–367

_____

## BRIAN RUSSELL DOLAN, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE TENTH CIRCUIT

[June 14, 2010]

CHIEF JUSTICE ROBERTS, with whom JUSTICE STEVENS, JUSTICE SCALIA, and JUSTICE KENNEDY join, dissenting.

The statute at issue in this case provides that "[i]f the victim's losses are not ascertainable [at least] 10 days prior to sentencing, . . . the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 18 U. S. C. §3664(d)(5). Under the Court's view, failing to meet the 90-day deadline has no consequence whatever. The Court reads the statute as if it said "the court shall set a date for the final determination of the victim's losses, *at any time* after sentencing." I respectfully dissent.

## I

In the absence of §3664(d)(5), any order of restitution must be imposed at sentencing, if it is to be imposed at all. Restitution "may be imposed in addition to [a] sentence" of probation, fine, or imprisonment only if it is authorized under §3556. See §§3551(b)–(c). Section 3556, in turn, authorizes courts to order restitution "*in imposing a sentence* on a defendant" (emphasis added), pursuant to yet other provisions requiring such orders to be made "*when sentencing* a defendant," §§3663(a)(1)(A), (c)(1), 3663A(a)(1) (emphasis added). The mandatory restitution provisions of §3663A "apply in all *sentencing proceedings* for

convictions of" certain crimes. §3663A(c)(1) (emphasis added). And the court "at the time of sentencing" must "state in open court the reasons for its imposition of the particular sentence"—including its reasons for "not or-der[ing] restitution" if it fails to do so. §3553(c).

These provisions authorize restitution orders *at* sentencing. They confer no authority to order restitution *after* sentencing has concluded. When Congress permits courts to impose criminal penalties at some time *other* than sentencing, it does so explicitly. See, *e.g.,* §3552(b) (provisional sentence during a study period); §3582(d) (authorizing certain penalties "in imposing a sentence . . . or at any time thereafter"); §3583(e) (permitting extension of supervised release); §§4244(d)–(e) (provisional sentencing for the mentally ill); see also Fed. Rules Crim. Proc. 32.2(b)(2)(B), (4)(A) (presentencing forfeiture orders); cf. *Corey* v. *United States*, 375 U. S. 169 (1963) (appeals from provisional and final sentences authorized by law).

Once a sentence has been imposed, moreover, it is final, and the trial judge's authority to modify it is narrowly circumscribed. We have stated that "the trial courts had no such authority" prior to the adoption of Rule 35, *United States* v. *Addonizio*, 442 U. S. 178, 189, and n. 16 (1979), and Congress has since revoked the broad authority to correct illegal sentences originally set forth in that Rule. See Sentencing Reform Act of 1984, Pub. L. 98–473, §215(b), 98 Stat. 2015–2016; see also Historical Notes on 1984 Amendments to Rule 35, 18 U. S. C. A., p. 605 (2008). Today, an error may be corrected by the trial court only if it is "clear," and only within 14 days after the sentence is announced. Rules 35(a), (c). The Rule of Criminal Procedure allowing extensions of time expressly provides that "[t]he court may not extend the time to take any action under Rule 35, except as stated in that rule." Rule 45(b)(2). This Court has reiterated that time limits made binding under Rule 35 "may not be extended," *Addonizio*,

*supra,* at 189, and that Rule 45(b)(2) creates "inflexible" "claim-processing rules," *Eberhart* v. *United States*, 546 U. S. 12, 19 (2005) (*per curiam*).

Thus, if the trial court fails to impose a mandatory term of imprisonment, see, *e.g.,* §924(c)(1)(A), or a mandatory fine, see, *e.g.,* 21 U. S. C. §844(a), or a mandatory order of restitution, see 18 U. S. C. §3663A, the Government cannot simply ask it to impose the correct sentence later. If the error is clear, and raised within 14 days, it might be corrected under Rule 35. Otherwise, the Government must appeal, and seek resentencing on remand. §§3742(b)(1), (g).

Section 3664(d)(5) is a limited exception to these bed-rock rules. It permits a trial court to go forward with sentencing while delaying any restitution order for up to 90 days. This provision is meaningful precisely because restitution must otherwise be ordered at sentencing, and because sentences are otherwise final unless properly corrected. If trial courts had power to amend their sentences at any time, §3664(d)(5) would be unnecessary.

Here, however, the District Court failed to make use of its limited authority under §3664(d)(5). Dolan was sentenced on July 30, 2007. The court declined to order restitution at that time or to set a date for a future restitution order. App. 35, 39–40; see also *id.,* at 49.[1] The 90-day period elapsed on October 28. At no time did the Government seek timely relief, whether under Rule 35 or by appeal. Cf. *Corey, supra,* at 174; *Berman* v. *United States*, 302 U. S. 211, 212 (1937). Nor did it assert any claim that the deadline had been lawfully extended or equitably tolled, an issue that I agree is not before us, see *ante,* at 3, 11. But on April 24, 2008—269 days after sentencing, and

———————

[1] Whether that date must itself be set at sentencing is not before us. The order setting the date plainly cannot be entered 182 days after sentencing, as happened here. See App. 3–4.

after Dolan had already been released from prison—the District Court nonetheless ordered $104,649.78 in restitution. App. to Pet. for Cert. 32a, 47a.

I cannot see where that court obtained authority to add additional terms to Dolan's sentence. That is the step the Court misses when it searches for the "remedy" for a violation of §3664(d)(5). *Ante,* at 1. The rule is that a trial court cannot alter a sentence after the time of sentencing. Section 3664(d)(5) is a limited exception to that rule. If the limits are exceeded the exception does not apply, and the general rule takes over—the sentence cannot be changed to add a restitution provision. Section 3664(d)(5) is self-executing: It grants authority subject to a deadline, and if the deadline is not met, the authority is no longer available.

The Court appears to reason that §3664(d)(5) confers the authority to add a restitution provision for at least 90 days, and that once the camel's nose of some permitted delay sneaks under the tent, any further delay is permissible. *Ante,* at 3, 5. But that is not what §3664(d)(5) says. It provides 90 days for a final determination of the victims' losses, not a free pass to impose restitution whenever the trial court gets around to it. The court had no more power to order restitution 269 days after sentencing than it did to order an additional term of imprisonment and send Dolan back to prison.

## II

### A

To avoid this conclusion, the Court runs through a series of irrelevancies that cannot trump the clear statutory text. It notes, for example, that §3663A provides that " '[*n*]*otwithstanding any other provision of law*, when sentencing a defendant convicted of [a specified] offense . . . , the court *shall* order . . . that the defendant make restitution to the victim of the offense.'" *Ante,* at 6 (quot-

ing §3663A(a)(1); emphasis in Court's opinion). But the issue before us is *when* restitution should be ordered, so the language the Court should underscore is "*when sentencing.*" This provision plainly confers no power to act *after* sentencing. Any such power attaches only by virtue of §3663A(d), which incorporates the procedures of §3664, including the limited 90-day exception. See also §3556 ("The procedures under section 3664 shall apply to all orders of restitution under this section").

The Court puts greater emphasis on its reading of the statute's purpose, namely to provide restitution to victims of crime. Certainly that was a purpose Congress sought to promote. But "no legislation pursues its purposes at all costs," and "it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." *Rodriguez* v. *United States*, 480 U. S. 522, 525–526 (1987) (*per curiam*).

Congress had to balance against the interest in restitution the contrary interest in promptly determining the defendant's sentence. The balance struck was clearly set forth in the statute: determine the victim's losses by a date "not to exceed 90 days after sentencing." §3664(d)(5). Whether or not that limit was "*primarily* designed to help victims of crime," *ante*, at 7, it does not cease to be law when invoked by defendants.

Nor can the Court find any support in the second sentence of §3664(d)(5). See *ante,* at 14–15. That provision addresses a distinct issue—what to do about newly discovered losses—and sets a higher "good cause" standard. The fact that Congress struck the balance between restitution and finality differently in that context does not justify overriding the balance it struck here.

The Court also analogizes the 90-day limit to other provisions discussed in our precedents, most of which have nothing to do with the rights of criminal defendants (for whom procedural protections are of heightened impor-

tance), let alone the finality of criminal sentencing. The cited cases are said to establish that an official's "failure to meet [a] deadline" does not always deprive that official of "power to act beyond it." *Regions Hospital* v. *Shalala*, 522 U. S. 448, 459, n. 3 (1998). But the failure to comply with §3664(d)(5) does not deprive anyone of anything: The trial court never had the general authority to alter sentences once imposed, in the way that the administrative agencies in the cited cases were said to have general regulatory authority. The trial court's authority to add a restitution provision to an otherwise final sentence was conferred by the very provision that limited that authority. Section 3664(d)(5) did not take away anything that might persist in the absence of §3664(d)(5).[2]

Even more perplexing is the Court's suggestion that references to the authority of trial courts necessarily implicate questions of jurisdiction. *Ante,* at 14. To say that a court lacks authority to order belated restitution does not use "authority" in a jurisdictional sense, see *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 511 (2006), but only in the same sense in which a court lacks "authority" to impose a sentence above the statutory maximum. Such action is an error of law, reversible on appeal, but it is not jurisdictional. As in *United Student Aid Funds, Inc.* v. *Espinosa*, 559 U. S. ___, ___ (2010) (slip op., at 9), compliance with §3664(d)(5) is "not a limitation on the . . . court's jurisdiction," but it is a statutory "precondition to obtaining a [particular] order." Here that condition was not satisfied.

─────────

[2] *United States* v. *Montalvo-Murillo*, 495 U. S. 711 (1990), is equally inapposite: The statute in that case rested the lower court's authority on whether a bail hearing had been held at all (it had), whereas here the only statutory condition is whether the losses were determined within 90 days of sentencing (they were not).

B

In the end, the Court does not appear to need §3664(d)(5) at all. It instead suggests that we abandon the bedrock rules that sentences once imposed are final, and that the only exceptions are ones *Congress* chooses to allow (and Congress has allowed various ones). The Court instead proposes a *judicial* power to alter sentences, apparently at any time. But if a trial court can "leave open, say, the amount of a fine," *ante,* at 12, why not, say, the number of years? Thus, after a defendant like Dolan has served his entire sentence—and who knows how long after?—a court might still order additional imprisonment, additional restitution, an additional fine, or an additional condition of supervised release. See *ante,* at 12–13.

The Court cites no authority in support of such "fill in th[e] blank" sentencing, other than two cases implicated in the Circuit split below. *Ante,* at 13. Prior to the enactment of §3664(d)(5), however, it was widely recognized that the requirement to impose restitution "when sentencing" meant that "[r]estitution must be determined *at the time* of sentencing," and could not be left open after sentencing had concluded. Federal Judicial Center, J. Wood, Guideline Sentencing: An Outline of Appellate Case Law on Selected Issues, p. 300 (Sept. 2002) (emphasis added; citing *United States* v. *Porter*, 41 F. 3d 68, 71 (CA2 1994); *United States* v. *Ramilo*, 986 F. 2d 333, 335–336 (CA9 1993); *United States* v. *Prendergast*, 979 F. 2d 1289, 1293 (CA8 1992); *United States* v. *Sasnett*, 925 F. 2d 392, 398–399 (CA11 1991)).

The Court finds Rule 35(a) inapplicable because the District Court was not "'correct[ing]'" a clear error in the sentence. *Ante,* at 14. True enough; but that is why the Government should *lose*. The limitation of Rule 35(a) to clear errors, corrected within 14 days of sentencing, does not leave trial courts free to make *other* changes to sentences whenever they choose. Rule 35(a) only makes sense

against a background rule that trial courts cannot change sentences at will.

The same is true of §3552(b), which empowers a court that does not wish to delay sentencing but "desires more information than is otherwise available to it" to impose a provisional sentence during a 120-day study period. That statute would be largely unnecessary if a trial court could do the same by order.

In *Addonizio*, 442 U. S., at 189, we thought it noncontroversial that a sentence once imposed is final, subject to such exceptions as Congress has allowed. Contrary to the Court's suggestion, *ante,* at 13, Dolan invoked that principle both here and below. See, *e.g.,* Brief for Petitioner 13, 15–18, 20, 29, 33, and n. 14, 36, 48, and n. 19; Reply Brief for Petitioner 1, 5–8; Appellant's Opening Brief in No. 08–2104 (CA10), pp. 12–13 (citing *United States* v. *Blackwell*, 81 F. 3d 945, 949 (CA10 1996), for the proposition that a "district court does not have inherent authority to modify a sentence"). That the Court finds it necessary to question that principle—indeed, to accuse this dissent of "creat[ing] th[e] rule," *ante,* at 13—highlights how misguided its decision is.

To counter the effects of its opinion and to restore some semblance of finality to sentencing, the Court advises defendants to seek mandamus—a remedy we have described as "drastic and extraordinary," "reserved for really extraordinary causes," and one of "the most potent weapons in the judicial arsenal." *Cheney* v. *United States Dist. Court for D. C.*, 542 U. S. 367, 380 (2004) (internal quotation marks omitted). What an odd procedure the Court contemplates! A defendant, who should have received a harsher sentence, is to invoke the drastic and extraordinary remedy of mandamus, to make sure he gets it. That is not how sentencing errors are corrected: If the trial court fails to order the appropriate sentence, the Government must appeal to correct it. It did not do so here, and

that ends the case. *Greenlaw* v. *United States*, 554 U. S. \_\_\_, \_\_\_ (2008) (slip op., at 6).

Moreover, the Court's mandamus remedy only helps defendants who know they are in danger of an increased sentence. So the Court imposes another rule, namely that the trial court must explicitly "leave open" the precise sentence at the time of sentencing, *ante,* at 12, or must make clear, "prior to the deadline's expiration[,] that it *would* order restitution" at some indeterminate time, *ante,* at 1 (emphasis added). But what if the court does not make the crucial announcement at sentencing, or "prior to the deadline's expiration"? Are these judicially created deadlines to be taken more seriously than those imposed by Congress? Or are we just back at the beginning, asking what the "remedy" should be for failing to meet the relevant deadline?

The Court's suggestion to require notice of intent to augment the sentence at *some* future date may be a good idea. But an even better one might be to set a particular date—say, 90 days after sentencing—on which the parties could base their expectations. That was Congress's choice, and it should be good enough for us.

\*　　\*　　\*

The District Court in this case failed to order mandatory restitution in sentencing Dolan. That was wrong. But two wrongs do not make a right, and that mistake gave the court no authority to amend Dolan's sentence later, beyond the 90 days allowed to add a sentencing term requiring restitution.

I am mindful of the fact that when a trial court blunders, the victims may suffer. Consequences like that are the unavoidable result of having a system of rules. If no one appeals a mistaken ruling on the amount of restitution (or whether restitution applies at all), finality will necessarily obstruct the victims' full recovery.

It is up to Congress to balance the competing interests in recovery and finality. Where—as here—it has done so clearly, the "judicial inquiry is complete." *Barnhart* v. *Sigmon Coal Co.*, 534 U. S. 438, 462 (2002) (internal quotation marks omitted).