[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 17, 2012
JOHN LEY
CLERK

No. 11-13624
Non-Argument Calendar
_____

D.C. Docket No. 4:09-cr-00038-RLV-WEJ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHADWICK BRANNON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 17, 2012)

Before DUBINA, Chief Judge, HULL and BLACK, Circuit Judges.

PER CURIAM:

Appellant Chadwick Brannon appeals the district court's order that he pay

restitution to a victim of child pornography, following his conviction and sentence for possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). On appeal, Brannon argues that the district court erred in ordering him to pay restitution to the victim because the court held his restitution hearing more than 90 days after his sentencing hearing, in violation of 18 U.S.C. § 3664(d)(5). He argues that equitable tolling did not toll the 90-day deadline, and that he did not waive the application of the 90-day deadline. Additionally, Brannon argues that the district court erred when it found that his possession of the child pornography victim's images proximately caused harm to the victim. Alternatively, Brannon argues that the district court erred when it ordered him to pay an unreasonable restitution amount of $3,500 to the victim.

## I. BACKGROUND

Brannon was indicted in November 2009 for knowingly receiving material containing child pornography (Count 1) and knowingly possessing material containing child pornography (Count 2). A jury found Brannon not guilty on Count 1 and guilty on Count 2. As noted in the probation office's presentence investigation report ("PSI"), an identifiable victim, who for privacy purposes is identified as "Vicky," requested restitution prior to Brannon's sentencing hearing held on October 28, 2010. At sentencing, the district court referred the issue of

restitution to a magistrate judge without deciding whether restitution should be ordered.

Pursuant to 18 U.S.C. § 3664(d)(5), the district court had 90 days from sentencing, or until January 26, 2011, to determine whether Vicky was Brannon's victim and, if so, the amount of Vicky's losses. On January 14, 2011, the magistrate judge held a telephonic hearing with the Government's attorney and Brannon's attorney, at which time the court discussed the impending 90-day deadline. Foreseeing the probability that the parties might not have information and witnesses available within the next 12 days, the magistrate judge asked Brannon's attorney whether he would waive the 90-day requirement. The court explicitly stated that Brannon would "have to waive" the deadline, and then asked, "Will you agree in case [the hearing]'s outside the 90 days?" to which Brannon's attorney replied, "Yes." [Tr. of January 14, 2011 Hr'g at 18.] Later during the telephonic hearing, Brannon's attorney suggested beginning the restitution hearing within the 90-day period and finishing it, if necessary, beyond the deadline. Accordingly, the court set an initial hearing for January 18, 2011.

However, on January 18 Brannon was unavailable to appear because he was in custodial transport from Virginia to Georgia; the Government was not yet prepared to call witnesses, and thus, no evidence was presented. When the

3

magistrate judge reiterated his understanding that Brannon had waived the 90-day deadline, Brannon's attorney said that he did not recall any mention of "the ultimate waiver." [R. 97 at 5.] While the attorneys discussed the possibility of beginning the restitution hearing on January 24 or 25, no hearing transpired on either date.

On February 23, 2011, about one month after the passing of the 90-day deadline, Brannon filed a motion for an order denying restitution because of the court's noncompliance with 18 U.S.C. § 3664(d)(5). On February 25, the magistrate judge held an informal status conference and recalled defense counsel's waiver of the 90-day deadline. Brannon's attorney stated that the waiver was contingent upon starting the evidentiary hearing within the 90-day period, and completing it beyond the deadline, if necessary. The magistrate judge proceeded to schedule a restitution hearing for March 30, 2011, and entered an order denying Brannon's February 23 motion.

At the March 30 restitution hearing, the Government presented testimony from Dr. Randall Green who psychologically evaluated Vicky before and after Brannon's indictment. Dr. Green explained the nature of Vicky's sexual abuse as a child as well as the dissemination of recordings of the abuse on the internet. Dr. Green bifurcated the trauma that Vicky experienced as a result of her sexual abuse

from the trauma that she experienced as a result of her knowledge of its distribution via the internet. He further explained her estimated costs of future treatment to be between $170,000 and $109,000. The Government presented further evidence that Vicky receives notification, via her attorney, each time a criminal is prosecuted for possessing her image. After the hearing, the magistrate judge also reviewed victim impact statements from Vicky, her mother, and her stepfather which detailed the effects of her humiliation, pain, and fear from knowledge that people were viewing her image.

The magistrate judge entered a report and recommendation that the district court order Brannon to pay $3,500 in restitution to Vicky. First, the magistrate judge noted that restitution was mandatory pursuant to 18 U.S.C. § 2259 and that Vicky was a "victim" as defined by the statute. The magistrate judge concluded that Vicky's statement and Dr. Green's testimony showed that Brannon's possession of her image was a proximate cause of Vicky's ongoing harm. Furthermore, the magistrate judge found Dr. Green's medical expense estimates to be accurate and reasonable. To determine a reasonable restitution amount attributable to Brannon, the magistrate judge researched 17 similar federal restitution orders against "end users" of Vicky's image. The magistrate judge found that on average Vicky had been awarded $2,799.41 per case. The

5

magistrate judge then reviewed the Government's notice of 100 prior child pornography restitution orders awarding to victims an average $4,321. Based on these two averages, the magistrate judge recommended that Brannon pay Vicky $3,500 in restitution. Over Brannon's objections, the district court adopted the magistrate judge's report and recommendation and ordered restitution on July 19, 2011. Brannon then perfected this appeal.

## II. DISCUSSION

### A. The legality of the district court's restitution order

Brannon argues that the district court erred in imposing restitution because it did not hold a restitution hearing within the 90-day period prescribed in 18 U.S.C. § 3664(d)(5). The Government responds that pursuant to *Dolan v. United States*, ___ U.S. ____, 130 S. Ct. 2533 (2010), the district court did not lose authority to impose restitution by conducting a restitution hearing more than 90 days after sentencing. Brannon replies that his case is distinguishable from *Dolan* because the district court in *Dolan* informed the defendant at sentencing that a restitution order would be forthcoming; the only question to be determined at the later hearing was the amount of restitution. However, as of the time of Brannon's sentencing hearing, the district court had not decided yet whether Brannon should pay restitution.

6

We review the legality of a restitution order *de novo*. *United States v. Huff*, 609 F.3d 1240, 1247 (11th Cir. 2010). Title 18 U.S.C. § 3664(d)(5) requires that

> [i]f the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing.

In *Dolan,* the Supreme Court, interpreting 18 U.S.C. § 3664(d)(5), held that when a sentencing court misses the 90-day deadline, the court is not deprived of its authority to order restitution. ___ U.S. at ____, 130 S. Ct. at 2539. Brannon identifies a limitation within the *Dolan* holding: a district court "retains the power to order restitution – *at least where . . . the sentencing court made clear prior to the deadline's expiration that it would order restitution . . . .*" *Id.* at ____, 130 S. Ct. at 2537 (emphasis added). While the district court in the instant case made it clear that it was going to conduct a hearing on Vicky's claim, the court did not make it clear, prior to January 26, 2011, that it would order restitution.

Without this limiting language in *Dolan*'s holding, a district court could potentially prejudice a defendant by delaying a restitution order for an inordinate amount of time, with no regard for the statutory deadline; consequently, a delayed restitution order could unfairly surprise the defendant with a financial obligation for which he had no prior notice at his sentencing. Indeed, the *Dolan* Court

7

discussed and left open the remote possibility that a delay in setting a restitution hearing could prejudice a defendant and threaten his due process rights. *Id.* at ____, 130 S. Ct. at 2541–42. However, Brannon makes no argument that the court's delay has prejudiced him in any way. Furthermore, Brannon had adequate notice before, during, and after sentencing to prepare his defense against the claim for restitution. A victim reported her claim for restitution; the PSI noted the claim; the sentencing court acknowledged the issue and referred it to a magistrate judge for recommendation; and the magistrate judge attempted to decide the merits of the claim in a timely manner. The relevant restitution statute, 18. U.S.C. § 2259, required the court to award restitution if it found that Brannon caused harm to a victim. Thus, during the 90-day statutory period, Brannon was aware of the likelihood, and not just the possibility, of a forthcoming restitution order. Consequently, it is appropriate, under the facts of this case, that we excuse the district court's untimely order because Brannon nevertheless had notice of his restitution obligation and he was not prejudiced.

Moreover, after reading *Dolan*, we note policy reasons in support of the Supreme Court's decision that are also applicable here. In *Dolan*, the Supreme Court found that the statutory deadline in 18 U.S.C. § 3664(d)(5) existed to encourage the court's "speed," not to limit the court's jurisdiction to a 90-day time

period.  *Dolan,* ___ U.S. at ____, 130 S. Ct. at 2538–39.  Accordingly, the Court found that "the Act's efforts to secure speedy determination of restitution is primarily designed to help victims of crime secure prompt restitution rather than to provide defendants with certainty as to the amount of their liability."  *Id.* at ____, 130 S. Ct. at 2540.  The Court reasoned that victims should not be made to go without restitution simply because the Government or the district court fails to ensure a timely restitution hearing.  *Id.* at ____, 130 S. Ct. at 2540.

In addition to these policy motivations, the record here shows that circumstances beyond the district court's control led to the delay of Brannon's restitution hearing.  For example, Brannon was in transport from Virginia to Georgia, making him unavailable to appear at the attempted restitution hearing on January 18, 2011.  Furthermore, the attorneys expressed difficulty in contacting and procuring information from Vicky's attorney.  Most importantly, after January 14, 2011, the magistrate judge proceeded under the assumption that Brannon's attorney voluntarily waived any objection to an untimely restitution hearing.  Because Brannon was not unfairly prejudiced, because the restitution statute exists for Vicky's benefit and not Brannon's, and because the court was delayed by circumstances beyond its control, we affirm the legality of the restitution order in spite of the district court's noncompliance with 18 U.S.C. § 3664(d)(5).

However, even if the untimely restitution hearing constitutes reversible error, we conclude from the record that Brannon's attorney invited the district court's error. The record shows that when the parties held a telephonic hearing before the magistrate judge on January 14, 2011, defense counsel represented that he would waive the requirement that the restitution hearing be held within the 90-day period. On this date, the district court had 12 days to hold the hearing in order to meet the deadline. The magistrate judge was not unmindful of the 90-day requirement; he stated that he did not want to "mess up by missing this 90-day thing." [Tr. of January 14, 2011 Hr'g at 18.] Defense counsel replied, "I won't say that you messed up." [*Id.*] The magistrate judge responded, "Well, yeah, but you'll have to waive it. Can you do that?" [*Id.*] After the government's comments, the magistrate judge asked again, "Will you agree in case [the hearing]'s outside the 90 days?" [*Id.*] Defense counsel unequivocally answered yes. While defense counsel subsequently suggested beginning the hearing within the 90-day period and, if necessary, completing the hearing outside the 90-day period, his suggestion in no way negated his assertion that he would waive objection to an untimely hearing.

On January 18, 2011, the magistrate judge reiterated his understanding that Brannon had waived any objection to an untimely restitution hearing. Defense

counsel equivocated, saying that he did not recall mentioning "anything about the ultimate waiver." [R. 97 at 5.] However, the record from January 14, discussed *supra*, contradicts defense counsel's memory. Moreover, defense counsel's January 18 statement is ambiguous and does not amount to a clear withdrawal of the unambiguous January 14, 2011 waiver.

"It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." *United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006) (per curiam). "The doctrine of invited error is implicated when a party induces or invites the district court into making an error." *United States v. Stone*, 139 F.3d 822, 838 (11th Cir. 1998) (per curiam). When invited error is found to exist, it prevents us from invoking the plain error rule and reversing. *United States v. Silvestri*, 409 F.3d 1311, 1327 (11th Cir. 2005). Here, the magistrate judge, aware of the time constraint, relied on defense attorney's on-the-record waiver. It would be unfair for the district court or this court to permit Brannon's attorney to reverse course after explicitly waiving his objection to an untimely hearing. Therefore, even if *Dolan* does not extend to Brannon's situation, we conclude that Brannon invited the district court's error. Consequently, this court will not entertain Brannon's argument that the district court lacked authority to impose restitution.

11

**B. Proximate causation and the amount of restitution**

Brannon argues that the government failed to produce evidence that his possession of Vicky's image proximately caused her harm. The Government responds that Dr. Green's testimony demonstrated that Vicky suffers psychological trauma from simply knowing that people like Brannon have viewed images of her sexual abuse.

In determining whether proximate causation exists to support a restitution order, we review the district court's factual findings for clear error. *United States v. Washington*, 434 F.3d 1265, 1267 (11th Cir. 2006). A district court's factual finding is clearly erroneous when a review of the evidence leaves us "with a definite and firm conviction that a mistake has been committed." *United States v. Foster*, 155 F.3d 1329, 1331 (11th Cir. 1998). In *United States v. McDaniel*, 631 F.3d 1204, 1209 (11th Cir. 2011), we held that a district court did not err in concluding that an end user of Vicky's image was a proximate cause of Vicky's emotional trauma. For the reasons articulated in *McDaniel*, and because Brannon cannot show clear error, we affirm the district court's finding that Brannon proximately caused harm to Vicky.

Alternatively, Brannon argues that the court erred in calculating an appropriate amount of restitution. Brannon contends that Vicky will ultimately

enjoy a windfall because so many defendants like himself have been, or will be, ordered to pay restitution to Vicky. We review the district court's factual finding as to the specific amount of restitution for clear error. *United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir. 2000). Even though the determination of the restitution amount is "an inexact science," under the Mandatory Victim Restitution Act, the district court is directed to "engage in an expedient and reasonable determination of appropriate restitution by resolving uncertainties with a view toward achieving fairness to the victim." *Huff*, 609 F.3d at 1248 (11th Cir. 2010) (quotations omitted). The district court is required to explain its findings with "sufficient clarity" to enable us to perform our function on appellate review. *Id*. Because the district court provided a reasoned explanation for its $3,500 restitution award, and because the court accounted for the likelihood that other defendants would be ordered to make restitution to Vicky in the future, we affirm the district court's restitution calculation.

### III. CONCLUSION

For the foregoing reasons, we hold that the district court did not err in imposing restitution after missing the 90 day restitution hearing deadline required by 18 U.S.C. § 3664(d)(5). Furthermore, we hold that the district court did not clearly err in finding proximate cause of harm to a victim or in determining an

appropriate restitution award.  Accordingly, we affirm the district court's order of restitution.

AFFIRMED.[1]

---

[1]Appellant's motion to file Reply Brief out-of-time is **GRANTED.**