**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

PAULETTE MARTIN, a/k/a Paulette Murphy, a/k/a Paulette Akuffo, a/k/a Paula Murphy, a/k/a Auntie,

*Defendant-Appellant.*

No. 10-5301

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DERREK LEWIS BYNUM, a/k/a Bo,

*Defendant-Appellant.*

No. 10-5304

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

LEARLEY REED GOODWIN, a/k/a Goodie, a/k/a Lonnie Ross,

*Defendant-Appellant.*

No. 10-5306

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Roger W. Titus, District Judge.
(8:04-cr-00235-RWT-1; 8:04-cr-00235-RWT-7;
8:04-cr-00235-RWT-3)

Argued: September 20, 2011

Decided: November 30, 2011

Before MOTZ, GREGORY, and DUNCAN, Circuit Judges.

---

Affirmed by published opinion. Judge Duncan wrote the opinion, in which Judge Motz joined. Judge Gregory wrote an opinion concurring in part and dissenting in part.

---

**COUNSEL**

**ARGUED:** Robert Whelen Biddle, NATHANS & BIDDLE, LLP, Baltimore, Maryland, for Appellants. Anthony William Vitarelli, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Michael D. Montemarano, MICHAEL D. MONTEMARANO, PA, Elkridge, Maryland, for Appellant Martin; Anthony D. Martin, ANTHONY D. MARTIN, PC, Greenbelt, Maryland, for Appellant Goodwin; Timothy S. Mitchell, LAW OFFICE OF TIMOTHY S. MITCHELL, Greenbelt, Maryland, for Appellant Bynum. Rod J. Rosenstein, United States Attorney, Deborah A. Johnston, Assistant United States Attorney, Bonnie S. Greenberg, Assistant United States Attorney, Stefan D. Cassella, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland; Lanny A. Breuer, Assistant Attorney General, Greg D. Andres, Acting Deputy Assistant Attorney General, Daniel

Steven Goodman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

## OPINION

DUNCAN, Circuit Judge:

A jury convicted Paulette Martin, Learley Goodwin, Derrek Bynum, and Lavon Dobie (collectively "Appellants") of various drug related offenses. As part of their sentences, the district court ordered Appellants to forfeit assets connected to their drug crimes pursuant to 21 U.S.C. § 853.[1] On appeal, Appellants seek vacature of the district court's orders of forfeiture.[2] For the reasons that follow, we affirm.

### I.

### A.

This case involves a large drug trafficking operation that supplied drugs throughout the District of Columbia, Maryland, and Virginia.[3] On May 5, 2004, a grand jury indicted Appellants on numerous charges relating to their participation in the drug trafficking operation. Authorities arrested Appellants on June 1, 2004. Upon, and subsequent to, the arrests,

---

[1]These assets included over $400,000 in currency from accounts held by Appellants, a Mercedes automobile owned by Martin, and several million dollars representing drug proceeds.

[2]Appellants made identical challenges to the criminal forfeiture orders in a separately filed appeal under Case No. 07-4059. The only difference between this appeal and the appeal in 07-4059 is that in 07-4059, Dobie joined appeal of the criminal forfeiture orders, whereas she does not so join in this appeal. We dispose of all challenges to the criminal forfeiture orders in this opinion.

[3]For a more thorough treatment of the facts surrounding this drug operation, see the opinion in Case No. 07-4059 and *United States v. Johnson*, 587 F.3d 625 (4th Cir. 2009).

the government seized various assets belonging to Appellants pursuant to civil forfeiture warrants issued under 18 U.S.C. § 981 and initiated civil forfeiture proceedings.

On January 19, 2005, a grand jury handed down a fourth superseding indictment against Appellants that included criminal forfeiture allegations against Appellants' assets. Thus, by January 2005, the government was pursuing both civil and criminal forfeiture of the same property.

Martin challenged the civil forfeiture of her assets on February 22, 2005, by filing a claim with the U.S. Department of Customs and Border Protection. The Civil Asset Forfeiture Reform Act, 18 U.S.C. § 983 ("CAFRA"), creates a process by which a claimant can challenge the civil forfeiture of assets in which she has an interest. CAFRA provides that when such a claim is made, a 90-day clock begins to run. Before the expiration of that period, the government must do one of three things: (1) "file a [civil] complaint for forfeiture," (2) "obtain a criminal indictment containing an allegation that the property is subject to forfeiture[ ] *and* take the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute," or (3) "return the property." 18 U.S.C. § 983(a)(3)(B) (emphasis added). If the government fails to complete one of these three steps before the 90 days expires, it is required to "promptly release the property." *Id.*

After waiting several months for the government to take action, Martin filed a motion with the district court for "Prompt Return of Property Pursuant to Federal Rule of Criminal Procedure 41(g)."[4] Martin asserted that she timely filed a claim on February 22, 2005, and that the government failed to complete any of the three actions listed in § 983(a)(3)(B)

---

[4]Rule 41(g) states in relevant part: "A person aggrieved . . . by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g).

within 90 days.[5] Martin contended that the government's continued possession of her property despite its failure to act violated § 983(a)(3)(B).

In response to Martin's motion, the government obtained criminal seizure warrants[6] for Martin's assets based on the forfeiture allegations in the fourth superseding indictment. The district court denied Martin's Rule 41(g) motion, holding that Martin's February 22 claim was untimely and, alternatively, that the government's obtaining criminal seizure warrants mooted her motion.

### B.

Appellants' trial began on June 6, 2006. On August 31, 2006, a jury convicted Appellants on various charges related to their participation in the drug trafficking operation. Subsequent to Appellants' convictions, post-trial forfeiture proceedings took place.

Beginning on November 21, 2006, the district court held two forfeiture hearings, taking evidence regarding the connection between the crimes for which Appellants were convicted and the property for which the government sought forfeiture.

---

[5]Martin argued that, although the government had obtained an indictment with forfeiture allegations before the deadline, it had not completed the step by "tak[ing] the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute." The government had also failed to file a complaint for forfeiture or return the property.

[6]Martin challenges the validity of these criminal seizure warrants, which were issued pursuant to 21 U.S.C. § 853(f). Section 853(f) allows the issuance of such warrants if, inter alia, "the court determines that there is probable cause to believe . . . that [a protective order] under subsection (e) of this section may not be sufficient to assure the availability of the property for forfeiture." Martin asserts that the district court erred in finding that a protective order under § 853(e) would not have been sufficient to assure the availability of her property. We have considered this argument and reject it.

After the second hearing on December 19, 2006, the district court stated:

> I have considered the testimony . . . as well as the arguments of counsel [and] I conclude that the government's preliminary forfeiture order is fully supported by the evidence at trial and . . . the evidence presented to me at the prior proceeding on forfeiture in this case.

J.A. 530. The district court referred to the proposed order submitted by the government and noted that the parties had agreed to a minor change in that order concerning joint and several liability. The district court then told the government lawyer, "[I]f you will prepare a modified order that addresses [joint and several liability], I will be glad to enter the order. . . . I see no reason why not to proceed to the execution of a modified order." J.A. 532. No one objected to this delay in entering the forfeiture order.

On that same day, immediately following the forfeiture hearing, the district court sentenced Appellants. Although the district court did not mention forfeiture in handing down each individual sentence, no one objected to the district court's omission.

Between January 5, 2007, and January 16, 2007, the court entered its judgments as to Appellants. The government delivered its modified order for preliminary forfeiture to the district court on January 19, 2007, and the district court entered the order that day. On June 14, 2007, the district court issued a final order of forfeiture but did not amend the judgments to include that order.

Almost three years later, on April 15, 2010, Appellants filed a motion in the district court to vacate the prior criminal forfeiture orders and to return all forfeited property. Appellants argued that the district court missed the deadline to final-

ize forfeiture as set forth in Federal Rule of Criminal Procedure 32.2, and therefore lost jurisdiction to enter the forfeiture orders. The district court denied Appellants' motion and amended the judgments to include the final order of forfeiture. This appeal followed.

## II.

On appeal, Appellants challenge the criminal forfeiture of their property. Martin individually argues that the government's pre-trial violation of the civil forfeiture statute rendered invalid its later criminal forfeiture.[7] In addition, Appellants collectively argue that the district court was without jurisdiction to order the criminal forfeiture of their property after their sentencings and the entry of judgments. In criminal forfeiture proceedings,[8] we review the district court's findings of fact for clear error and the district court's legal interpretations de novo. *United States v. Morgan*, 224 F.3d 339, 342 (4th Cir. 2000). We consider each challenge in turn.

## A.

We first consider Martin's argument that the government's pre-trial actions with respect to her property violated the civil

---

[7]As part of this argument, Martin claims that the unlawful possession of the property amounted to an illegal seizure in violation of the Fourth Amendment. As a result, in addition to not being subject to forfeiture, Martin argues, the property also should have been excluded as evidence from her trial. We disagree. "[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring v. United States*, 555 U.S. 135, 144 (2009). In contrast, the government's error in this instance, if any, "ar-[ose] from nonrecurring and attenuated negligence [and] is thus far removed from the core concerns that led [the Court] to adopt the [exclusionary] rule in the first place." *Id.*

[8]Although the attempted civil forfeiture of Martin's property plays a role in our analysis, because the government never completed the civil forfeiture, our review is limited to the ultimate criminal forfeiture of her property.

forfeiture statute, thereby rendering the later criminal forfeiture of the property invalid. Martin argues that the district court erred both in holding that her claim was untimely and in holding that the government's attainment of criminal seizure warrants mooted her challenge to its unlawful possession of her property. As a remedy for the government's illegal seizure, Martin seeks the vacature of the subsequent criminal forfeiture of her property.[9]

Even assuming, without deciding, that the government seized Martin's property illegally, we cannot grant the remedy—the vacature of the property's later criminal forfeiture—that she seeks. The illegal seizure of property does not immunize that property from forfeiture as long as the government can sustain the forfeiture claim with independent evidence. *See, e.g.*, *United States v. Pierre*, 484 F.3d 75, 87 (1st Cir. 2007); *see also INS v. Lopez Mendoza*, 468 U.S. 1032, 1039-40 (1984) (noting that, just as an unlawful arrest does not result in the suppression of the "body" of the defendant in a criminal proceeding, the unlawful seizure of property does not result in the suppression of that property in a forfeiture proceeding). Here, Martin does not dispute that the evidence produced by the government, independent of the property, was sufficient to justify the criminal forfeiture. We therefore reject Martin's challenge.

## B.

We next consider Appellants' argument that the district court was without jurisdiction to order the criminal forfeiture of their property after sentencing and the entry of judgments.

---

[9]Martin does not seek monetary damages. A person whose property has been improperly held by the government generally can sue the government for damages pursuant to the Federal Tort Claims Act. *See* 28 U.S.C. § 2680(c). Such a remedy is unavailable, however, as to property, like Martin's, that is ultimately forfeited. *Id.* at § 2680(c)(2).

Criminal forfeiture is part of a defendant's sentence. *Libretti v. United States*, 516 U.S. 29, 38-39 (1995). The procedure used to effect criminal forfeiture is set forth in Rule 32.2. First, the government must include a forfeiture allegation in the indictment against the defendant. Fed. R. Crim. P. 32.2(a). After conviction, the government must establish a nexus between the property for which it is seeking forfeiture and the crime by a preponderance of the evidence. *Id.* at 32.2(b)(1)(A).[10] If the government satisfies its burden, the district court enters a preliminary order of forfeiture. *Id.* 32.2(b)(2). Rule 32.2, as it existed at the time of Appellants' sentencings,[11] provided that, "[a]t sentencing . . . the order of forfeiture becomes final as to the defendant and *must* be made a part of the sentence and be included in the judgment." Fed. R. Crim. Pro. 32.2(b)(3) (2004 version) (emphasis added).

Appellants correctly note that the district court neither referenced forfeiture in sentencing Appellants, nor included final orders of forfeiture in their judgments. In fact, the district court failed to enter the preliminary order of forfeiture until after it entered judgments and did not enter a final order of forfeiture until months later. Appellants argue that by missing the deadline set in Rule 32.2, the district court lost jurisdiction to enter orders of forfeiture and to amend the judgments to include the orders of forfeiture.

Although Rule 32.2, as it existed in 2004, required a district court to finalize forfeiture orders at sentencing and include them in a final judgment, it did not set forth the consequences that would flow from missing that deadline. The Supreme Court, however, has recently provided guidance in an analogous context. Following this guidance, we conclude that missing the deadline set in Rule 32.2 does not deprive a district court of jurisdiction to enter orders of criminal forfeiture so

---

[10]The preponderance standard is set forth in case law, not the statute. *See, e.g.*, *United States v. Smith*, 966 F.2d 1045, 1050-53 (6th Cir. 1992).

[11]The rule was redrafted in 2009.

long as the sentencing court makes clear prior to sentencing that it plans to order forfeiture.

In *Dolan v. United States*, 130 S. Ct. 2533 (2010), the Court examined a statute that set forth a deadline without specifying a consequence, and provided an analytical construct that is applicable here. There, the district court ordered the defendant, as part of his sentence, to pay restitution to the victim of his crime. *Id.* at 2537. The governing statute provided, "the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 18 U.S.C. § 3664(d)(5). It was undisputed both that the defendant was on notice that the district court would order restitution and that the district court missed the deadline to order restitution and failed to include an order of restitution in the defendant's judgment. *Dolan*, 130 S. Ct. at 2538.

*Dolan* established three categories in which to consider statute- and rule-based deadlines depending on the deadline's purpose, as evidenced by the statute or rule's language and context.[12] *Id.* at 2538-39. The first, a "jurisdictional condition," has the strictest consequence: "The expiration of a 'jurisdictional' deadline prevents the court from permitting or taking the action to which the statute attached the deadline. The prohibition is absolute. The parties cannot waive it, nor can a court extend that deadline for equitable reasons." *Id.* at 2538. This type of deadline is unlikely to be inferred when a statute or rule fails to specify any consequence for noncompliance. *See id.* at 2539 (finding that the lack of a specified consequence weighs against imposing a coercive sanction). Examples of jurisdictional conditions include the deadlines for

---

[12]Contrary to the dissent's suggestion, *post* at 15, the Court did not narrowly frame its decision in *Dolan* around the issue of restitution. Instead, the Court in *Dolan* set forth broad guidance for courts faced with these circumstances to determine the consequence of missed deadlines. *See* 130 S. Ct. at 2357 (broadly noting, in the first sentence of the opinion, "This case concerns the remedy for missing a statutory deadline").

filing appeals. *See, e.g.*, *Bowles v. Russell*, 551 U.S. 205, 209-10 (2007).

The second category of deadline, a "claims-processing rule," "do[es] not limit a court's jurisdiction, but rather regulate[s] the timing of motions or claims brought before the court." *Dolan*, 130 S. Ct. at 2538. No sanction is applied for missing this type of deadline "[u]nless a party points out to the court that another litigant has missed such a deadline." *Id.* An example of a claims-processing rule is the deadline for filing a motion for a new trial in a criminal case. *See, e.g.*, *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam).

The third category of deadline, a "time-related directive," is the most forgiving. A time-related directive keeps a process moving by creating a deadline "that is legally enforceable but does not deprive a judge or other public official of the power to take the action to which the deadline applies if the deadline is missed." *Dolan*, 130 S. Ct. at 2538.

The *Dolan* court focused on six aspects of the deadline created by the restitution statute in concluding that it is a "time-related directive." First, the deadline, even though it contains the word "shall," does "not specify a consequence for non-compliance." *Id.* at 2539 (internal quotations omitted). Second, the substantive purpose of the restitution statute is to aid victims of crime, rather than provide some protection for defendants. *Id.* Third, the statute's deadline "is *primarily* designed to help victims of crime secure prompt restitution rather than to provide defendants with certainty as to the amount of their liability." *Id.* Fourth, "depriving the sentencing court of the power to order restitution would harm those—the victims of crime—who likely bear no responsibility for the deadline's being missed and whom the statute also seeks to benefit." *Id.* at 2540. Fifth, the Court had "previously interpreted similar statutes similarly." *Id.* Finally, in the case of restitution, "the defendant normally can mitigate any harm that a missed deadline might cause." *Id.* at 2541.

Considering the facts before us through the lens of *Dolan*, we conclude that Rule 32.2(b)(3), as it then existed, established a time-related directive.[13] First, like § 3664(d)(5), the 2004 version of Rule 32.2(b)(3)—although it used the word "must"—did not specify a consequence for noncompliance. Second, the substantive purpose of criminal forfeiture is not to provide protection for defendants but to deprive criminals of the fruits of their illegal acts and deter future crimes. *Cf. United States v. Ben-Hur*, 20 F.3d 313, 319 (7th Cir.1994) ("[T]he purpose behind criminal forfeiture under section 853 is not just to sanction illegal conduct, but also to strip drug dealers of their economic power."). Third, there is no indication that the purpose of the deadline set in Rule 32.2 is to provide defendants with certainty as to the amount of their liability. Fourth, because proceeds from forfeiture may go to victims of crime,[14] preventing forfeiture based on the failure to meet the Rule 32.2 deadline would often harm those who likely bear no responsibility for the deadline's being missed and whom the statute also seeks to benefit. Fifth, as demon-

---

[13]The dissent argues that this case is distinguishable from *Dolan* because, unlike in *Dolan*, this case presents not only the missing of a statutory deadline, "but also the elapsing of the timeframe in which a court may amend a sentence" under Rule 35. *Post*, at 16-17. We believe this a misreading of *Dolan*. Although the dissent is correct that all that was left for district court to do in *Dolan* was to fill in the amount of restitution, this "fill in the blank" is no less an amendment of a sentence than what happened in this case. Indeed, here the only blank left to be filled was a provision on joint and several liability, a change to which Appellants consented. J.A. 504, 518, 520, 532. Likewise, assuming the dissent is correct that it was not error under Rule 35 for the district court in *Dolan* to miss the statutory deadline governing restitution, it was similarly not error under Rule 35 for the district court here to make an almost identical mistake, missing the deadline governing forfeiture. Accordingly, we believe *Dolan* is closely analogous to these circumstances and thus compels our decision here.

[14]*See* 21 U.S.C. § 853(i) ("With respect to property ordered forfeited under this section, the Attorney General is authorized to . . . take any other action to protect the rights of innocent persons which is in the interest of justice. . . .").

strated by *Dolan*, the Court has previously interpreted similar statutes similarly. Finally, Appellants could have mitigated any harm that the missed deadline might have caused by objecting at their respective sentencings to the lack of finality as to the forfeiture orders. *See Dolan*, 130 S. Ct. at 2541. They failed to do so.

The relevant language of the current Rule 32.2 further supports our conclusion that this deadline is not a jurisdictional condition. It now provides that, "[t]he court must include the forfeiture when orally announcing the sentence *or must otherwise ensure that the defendant knows of the forfeiture at sentencing*." Rule 32.2(b)(4)(B) (emphasis added). As the Advisory Committee notes, the change in the rule was not one of substance, but was instead intended "to clarify what the district court is required to do at sentencing. . . ." Fed. R. Crim. P. 32.2 advisory committee's notes (2009 amendment). This clarification emphasizes that the purpose of the deadline is not to create a coercive sanction, but to ensure that a defendant is on notice as to all aspects of his sentence, including forfeiture.

Our colleague's comprehensive dissent notwithstanding, there is no dispute that Appellants were fully aware of both the pending forfeiture itself and, beyond even the facts of *Dolan*, the exact amount. Notably, Appellants themselves do not—and indeed could not—argue that they were caught off-guard. The district court held multiple, comprehensive hearings on forfeiture, in which both the fact of liability and the amount were determined. *See* J.A. 364-461, 480-532. The district court made clear at the end of the final forfeiture hearing—a mere minutes[15] prior to sentencing Appellants—that it

---

[15]From the record, it appears the time between the district court unequivocally stating that it intended to enter—after a minor change—the forfeiture order—which was presented to it by the government, with copies given to Appellants—and the beginning of the individual sentencings was approximately 32 minutes. *See* J.A. 532, 533, 543.

intended to enter the forfeiture order. Appellants lack of surprise is further evidenced by the fact that they did not challenge the forfeiture until almost three years after the district court entered the final order of forfeiture.

Accordingly, because the Rule 32.2 deadline, as it then existed, is most persuasively understood as a time-related directive rather than a jurisdictional condition, and because Appellants were indisputably on notice at the time of sentencing that the district court would enter forfeiture orders, we refuse to vacate the district court's tardy forfeiture orders.

## III.

For the foregoing reasons, we affirm the criminal forfeiture of Appellants' assets.

*AFFIRMED*

GREGORY, Circuit Judge, concurring in part and dissenting in part:

Although I concur in Parts I and II.A of Judge Duncan's opinion rejecting appellant's requested remedy of suppression, I am compelled to dissent from Parts II.B and III.

Not a single case, published or unpublished, has done what today's majority does: it holds that even if a punishment of forfeiture is not discussed at sentencing or ordered in judgment, a defendant can still be subject to that punishment if she has notice that such punishment may be ordered.

It is undisputed that the district court did not enter a preliminary order of forfeiture before sentencing and judgment. Nor were proper remedial actions, such as amendment of the sentence pursuant to Rule 35, timely pursued under the Federal Rules of Criminal Procedure. Because the appellants' sentences became final for purposes of Rule 32.2 before the dis-

trict court entered the preliminary order of forfeiture, I would hold that the district court did not have authority to enter the preliminary and final orders of forfeiture in 2007 and the amended judgments in 2010, and therefore the district court's orders and amended judgments should be vacated.

In order to reach its conclusion that the appellants must forfeit their property despite no discussion about forfeiture at their sentencing hearings and no inclusion of forfeiture in their written judgments, the majority relies heavily on *Dolan v. United States*, 130 S. Ct. 2533 (2010). That case held that a statutory deadline to order restitution "does not deprive the court of the power to order restitution," *id.* at 2539, "where . . . the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount," *id.* at 2537. *Dolan*, however, does not stand for the majority's contention that as long as the defendant has notice that a penalty would be ordered, the sentencing court retains authority to impose such penalty after the relevant statutory deadline. *See supra* at 9-10 ("[M]issing the deadline set in Rule 32.2 does not deprive a district court of jurisdiction to enter orders of criminal forfeiture so long as the sentencing court makes clear prior to sentencing that it plans to order forfeiture."). The *Dolan* decision is much narrower: the sentencing court retains authority to determine the amount of a penalty after the relevant statutory deadline when the sentencing court makes the defendant aware at sentencing that the defendant will be subject to that penalty. The majority takes *Dolan* out of its context and gives its narrow holding breadth in a qualitatively different area of the law. I respectfully dissent.

There are two differences between the present case and *Dolan* that I believe warrant vacatur of the district court's orders. First, *Dolan* was narrowly conscribed to cover only restitution cases in which the amount of the penalty—not the fact of the penalty itself—was left blank. Second, the restitu-

tion and forfeiture statutory schemes have different purposes and structures. I deal with each in turn.

## I.

It is incontrovertible that forfeiture was included neither in the oral sentence nor in the written judgment for any of the appellants. The factual difference from *Dolan* is striking. Both Dolan's sentence and order of judgment state that he was going to be subject to restitution; it was only the amount of the penalty that was left open. The difference between not knowing the amount of a punishment, as in *Dolan*, and not being subject to a punishment at all, as here, is a difference in kind, not degree. It is true, as the majority notes, the appellants were on notice that their sentences would include forfeiture. *See supra* at 10. But being sentenced with judgment entered against you is likewise fundamentally different from being on notice that you may be sentenced. Under the majority's holding, it seems that after a defendant "has served his entire sentence—and who knows how long after?—a court might still order additional imprisonment, additional restitution, an additional fine, or an additional condition of supervised release." *Dolan*, 130 S. Ct. at 2548 (Roberts, C.J., dissenting).

Careful parsing of *Dolan* and the precedent in the asset-forfeiture context reveals that these decisions are all meant to solve a very particular problem of court management: ensuring efficient use of the court's time while not sacrificing the accuracy of its punishments. The *Dolan* Court tells us that its decision covers the case in which "a judge who (currently lacking sufficient information) wishes to leave open, say, the amount of a fine, or a special condition of supervised release." *Id.* at 2543. What's needed in such cases is to give judges the flexibility to "essentially fill in an amount-related blank in a judgment that made clear that restitution was applicable." *Id.* at 2544. The significant difference in the appellants' cases is that it wasn't just the amount of the forfeiture that they

awaited, it was the very fact of forfeiture that was left open by the sentencing hearing and the judgment.

Critically, Rule 35 is squarely at issue on these facts, although it is not addressed by the majority. *See* Fed. R. Crim. P. 35(a) (2008) ("Within 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error."). That Rule 35 is so squarely presented here highlights the legal difference between merely filling in "amount-related blank" and issuing a punishment. Because the *Dolan* district judge was merely filling in an amount-related blank, Rule 35 did not apply: there was no error to correct in the sentence. *Dolan*, 130 S. Ct. at 2544. While the only timing rule at stake in *Dolan* was the 90-day limit for determining the amount of restitution imposed by 18 U.S.C. § 3664(d)(5), we are faced here with the passing of not only Rule 32.2's requirement, but also the elapsing of the timeframe in which a court may amend a sentence. There are significant differences between Rule 32.2 and *Dolan*'s restitution statute, which I address in Part II, *infra*. More troubling, however, is the fact that the majority's ruling essentially reads Rule 35 out of the Federal Rules of Criminal Procedure.

I agree with the consensus view that a violation of Rule 32.2 without more does not necessarily void an order of forfeiture for lack of authority. *See, e.g.*, *United States v. Yeje-Cabrera*, 430 F.3d 1, 6, 14, 16 (1st Cir. 2005); *United States v. Bennett*, 423 F.3d 271, 272 (3d Cir. 2005). Two avenues exist for a court to remedy a failure to include forfeiture in a defendant's sentence. As already mentioned, Rule 35 is one such path. And Rule 36 provides another: "[A]fter giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." Fed. R. Crim. P. 36 (2010).

Here, the district court did amend its judgment some four years after its initial entry when it discovered its error through

the appellants' motion to vacate the orders of forfeiture. Rule 36 indeed states explicitly, "at any time," and the 2009 amendments to Rule 32.2 make clear that a district court may correct its failure to include the forfeiture order in the judgment "at any time" through the use of Rule 36. *See* Fed. R. Crim. P. 32.2(b)(4)(B) (2010). But far in advance of the amendment of judgment, the seven-day window to amend the oral sentences had closed, and the appellants' sentences had become final. By modifying its judgments four years after sentencing through Rule 36, the district court attempts to sweep Rule 35 under the rug. The fact that the court modified judgment some four years later via Rule 36's "at any time" allowance cannot trump Rule 35's seven-day window to correct a "clear error" in sentencing. Rule 35 would never be necessary if we so broadly read Rule 36's corrective power. To allow such backdoor routes would cast Rule 35 out of the Federal Rules of Criminal Procedure and undermine the finality of criminal sentences. *See United States v. Pease*, 331 F.3d 809, 816 (11th Cir. 2003) ("Rule 36 can be used to correct 'clerical' errors; it cannot be used, as it was here, to make a substantive alteration to a criminal sentence.") (citing *United States v. Whittington*, 918 F.2d 149, 151 (11th Cir. 1990); *United States v. Werber*, 51 F.3d 342, 347 (2d Cir. 1995) ("Rule 36 is not a vehicle for the vindication of the court's unexpressed sentencing expectations, or for the correction of errors made by the court itself.") (internal quotation marks omitted).

It is therefore not the violation of Rule 32.2's command alone that compels vacatur. That violation, coupled with expiration of Rule 35's timeline, is determinative. Rule 35 "only makes sense against a background rule that trial courts cannot change sentences at will." *Dolan*, 130 S. Ct. at 2548 (Roberts, C.J., dissenting). An imposed sentence is final subject only to the exceptions that Congress has explicitly permitted. *United States v. Addonizio*, 442 U.S. 178, 189 (1979). Before Rule 35 was adopted, "trial courts had no . . . authority" to modify imposed sentences. *Id.* at 189 n.16. Yet today's majority

would read Rule 35 to say that trial courts have authority to amend sentences at any time—the clear textual limit of seven days notwithstanding and despite the Supreme Court's clear command that Rule 35's time limit is "jurisdictional and may not be extended." *Id.* at 189.

It is telling that the majority does not cite to any precedent in the forfeiture context for its holding. In all other cases on missed Rule 32.2 deadlines, even in the most egregious factual scenarios, there is at least a discussion at the sentencing hearing in which the court confirms that the defendant will be subject to forfeiture. *See, e.g.*, *United States v. Grasso*, 376 F.App'x 166, 167 n.1 (3rd Cir. 2010); Brief of Appellee at 19, *United States v. Ereme*, 339 F.App'x 340 (4th Cir. 2009) (No. 08-5094), 2009 WL 958911 at \*19 (defense acknowledged at sentencing that "[t]he defendant has already been the subject of a forfeiture order for $367,500, which will indeed bankrupt the defendant if it's permitted").

Furthermore, the changes wrought by the 2009 amendments to the Federal Rules of Criminal Procedure do not support the majority's position, as it contests, *see supra* at 13; the amendments support the view that the present facts are beyond the pale. The amended Rule states, "The court must include the forfeiture when orally announcing the sentence or must otherwise *ensure* that the defendant knows of the forfeiture at sentencing." Fed. R. Crim. P. 32.2(b)(4)(B) (2010) (emphasis added). There is nothing in the record that demonstrates that the sentencing court ensured that the defendants knew of forfeiture. The Rule does not say that notice from previous hearings suffices. Furthermore, the amended rule, relied upon by the *Grasso* court, 376 F.App'x at 168, highlights the important factual difference between the present case and *Grasso* and *Ereme*. In the latter cases, forfeiture was discussed at the hearing, demonstrating the defendant's knowledge that forfeiture was going to be imposed. The Rule certainly could have been written so that it would be sufficient

that a defendant is on notice of a penalty of forfeiture. It, however, was not so written.

The only case factually identical to this one is a reported district court case from this Circuit. *See United States v. King*, 368 F. Supp. 2d 509 (D.S.C. 2005). The *King* court found it had no authority to enter a preliminary order of forfeiture after sentencing when forfeiture had not been raised at sentencing or entered in the judgment. (The court went further to conclude that Rule 36 cannot be used to substantively alter a defendant's sentence. *Id.* at 512; *see infra* Part I.B. (discussing Rules 35 and 36).) Crucially, "the government . . . raised no issue regarding forfeiture at sentencing." *Id.* at 512-13. The record below makes it clear that forfeirure was not mentioned at sentencing, nor made part of the oral sentence, nor included in the judgment of the court. Indeed, under the pre-2010 revisions to Rule 32.2, "[w]hile it is not expressly stated in the Rule, most courts hold that the provision in Rule 32.2(b)(3) requiring the forfeiture order to be made part of the sentence means that the court must mention the forfeiture when the sentence is orally announced." Stefan D. Cassella, Asset Forfeiture Law In The United States 600 (2007).

A defendant's interest in the finality of his sentence is greater in cases in which there is no indication in the sentence or the judgment that the defendant is subject to a certain sanction than cases like *Dolan* in which the sentencing court and the judgment both state that the defendant is subject to a certain sanction in an amount to be determined later. Rule 35's time limits, even if they don't apply to the "filling in the blanks" of a restitution order included in the sentence and in the judgment, must surely apply in force to the simple fact of forfeiture. Contrary to the *Dolan* dissent's view, a defendant's interest in the finality of his sentence was not squarely presented in that case as it is here.

## II.

Despite the majority's reliance on *Dolan*'s policy factors, many of those factors actually have little relevance in the for-

feiture context or they favor the appellants in this case. Even if I were to conclude that *Dolan*'s framework covered the instant case despite the fact that this isn't a "fill in the blank" case, I would hold that the six policy and statutory-purpose considerations of *Dolan* compel vacatur of the forfeiture orders and amended judgments.

First, the *Dolan* Court relied heavily on the importance of full compensation of victims in restitution cases. 130 S. Ct. at 2540 ("[T]he statute seeks speed primarily to help the victims of crime and only secondarily to help the defendant."). In *Dolan*, victims of the crime would be prejudiced if the Court had vacated the untimely restitution order. The same concern for victims does not explicitly appear in the criminal forfeiture statutes. To the extent that third parties are contemplated by the forfeiture scheme, their rights are injured by the majority's conclusion that there is no force behind Rule 32.2's deadline. The forfeiture rule provides that the preliminary order of forfeiture becomes final as to the defendant at the time of sentencing. Fed. R. Crim. P. 32.2(b)(4)(A). What this means is that thereafter a third party may challenge the forfeiture order before it becomes final in order to dispute, say, ownership of the property subject to forfeiture. *See id.* Insisting on a prompt date for the preliminary order protects third-party interests and promotes judicial efficiency. The problem before Rule 32.2(b) was that "third parties who might have an interest in the forfeited property are not parties to the criminal case. At the same time, a defendant who has no interest in property has no incentive, at trial, to dispute the government's forfeiture allegations." Fed. R. Crim. P. 32.2 (2000 advisory committee's note). Rule 32.2(b) aligns the incentives of the parties, provided that the preliminary order of forfeiture becomes final as to the defendant at a specific time—at sentencing.

That the order of forfeiture becomes final as to the defendant at sentencing is in stark contrast to the restitution framework, which allows the trial court to go forward with

sentencing while delaying the restitution order for 90 days. 18 U.S.C. § 3664(d)(5) (2010). This difference puts Rule 35 squarely in play in the forfeiture context, whereas it is practically mooted by § 3664(d)(5)'s 90-day allowance to enter the amount of the victim's losses. Again, it is not solely Rule 32.2's structure that compels the conclusion that the orders must be vacated; it is Rule 32.2 read in conjunction with Rule 35 that mandates such an outcome.

The second and fourth *Dolan* grounds discussed by the majority are the purpose of the statutory scheme. The primary purpose of forfeiture is to punish and deter criminals, not compensate injured third parties, as is the goal of the restitution statute. The majority is right when it argues that "the substantive purpose of criminal forfeiture is . . . to deprive criminals of the fruits of their illegal acts and deter future crimes." *Supra* at 12. But the same, of course, could be said for *any* criminal punishment for crimes involving illicit gains. It cannot mean that all deadlines for imposing sentences can be waived because of that undeniably important goal. It was the rights of third parties—victims of defendants—that the *Dolan* decision sought to protect; if it sought to promote general deterrence and the punishment of wrongs, such promotion was only ancillary.

The third *Dolan* ground the majority discusses is the fact that "there is no indication that the purpose of the deadline set in Rule 32.2 is to provide defendants with certainty as to the *amount* of the liability." *Supra* at 12 (emphasis added). Of course, the issue isn't whether Rule 32.2's purpose is to provide certainty with respect to the *amount* of liability—this is not a "fill in the blank" case like *Dolan*—it is whether Rule 32.2, when read with Rule 35, is intended to provide certainty to the defendant as to whether she is subject to that punishment at all.

The fifth ground discussed by *Dolan* and noted by the majority is that similar statutes have been interpreted simi-

larly. This merely assumes the answer to the very question that we are trying to answer today: are the forfeiture statute and Rule 35 similar enough to the restitution framework to warrant the application of *Dolan*?

The sixth ground of *Dolan* cited by today's majority is that the appellants could have prevented any harm by objecting to their sentences' "lack of finality as to the forfeiture orders." *Supra* at 13. To put it less charitably, the majority expects defendants to object at their sentencing on the grounds that a particular punishment they thought might be imposed has not actually been imposed. Apart from the oddity of requiring a defendant to ask the court for a harsher sentence, this logic undermines our adversarial system by forcing a defense attorney to alert the court of the prosecutor's oversights. *See, e.g.*, Tx. Eth. Op. 504 (defense counsel has no duty to correct mistakes made by prosecutor in court about prior convictions of defendant). The district court, at each of the appellants' sentencing hearings, asked the government if anything else needed to be ruled on, and the government in each instance replied in the negative. J.A. 586 (Martin); J.A. 688 (Bynum); J.A. 788-89 (Goodwin). The government also had an opportunity to correct the court's mistake through use of an 18 U.S.C. § 3742 appeal, but it chose not to. *See Pease*, 331 F.3d at 811-12 (government could not use Rule 36 to amend the judgment correcting a sentence that did not mention forfeiture when government did not use appeal under § 3742). To insist a defense attorney should object when a sentence is not as high as she expected violates the principle of zealous advocacy required by our adversarial system.

Taken as a whole, the policy and structural considerations determinative in *Dolan* either have little import in the forfeiture context or actually support the appellants' case. Even if I were to conclude that these facts present a *Dolan* issue with respect to Rule 32.2 alone, I would find the differences between the forfeiture and restitution schemes command vacatur of the district court's orders.

### III.

Congress surely did not want criminals to retain the profit of their illegal enterprises—certainly not anymore than they want criminals to serve a shorter sentence than was intended by the sentencing judge. Yet Congress also values the finality of a sentence. The Federal Rules of Criminal Procedure provide for the correction of oversights in sentencing and in judgments. The district court here did not timely avail itself of these correctives. As such, I would find that the district court had no authority to enter the preliminary order of forfeiture after the sentence became final, nor did it have authority to issue its final order of forfeiture. I would therefore vacate the amended judgments and orders of forfeiture.